**WOODWARD & COMPANY and Phoenix Assurance Company of New York, a Corporation, Petitioners,**

v.

**STATE INDUSTRIAL COMMISSION and W. L. Shannon, Respondents.**

No. 38756.

Supreme Court of Oklahoma.

Feb. 9, 1960.

Rhodes, Crowe, Hieronymus & Holloway, and Harold M. Durall, Oklahoma City, for petitioners.

Paul Harkey, Oklahoma City, for W. L. Shannon, respondent.

Mac Q. Williamson, Atty. Gen., Richard M. Huff, Asst. Atty. Gen., for respondent, State Industrial Commission.

WELCH, Justice.

W. L. Shannon, hereinafter called claimant, admittedly sustained an accidental injury on August 20, 1957, when struck in the head, neck and upper back, by a pipe nipple ejected from the casing at an oil well site in McClain County, Oklahoma. While gradually progressing towards normal recovery, he suffered, in February, 1958, a setback rendering him temporarily totally disabled. Claimant remained under medical care from the date of injury until January 20, 1959, when he was discharged from active treatment.

A proceeding to determine the extent of permanent disability was conducted on February 25, 1959, and an order was thereafter entered under the date of April 16, 1959, which found, among others, that claimant sustained an accidental injury to the head and neck, arising out of and in the course of his hazardous employment with the petitioner, Woodward & Company, as a result of which he sustained 70 per cent permanent partial disability to the body as a whole. Statutory amount of compensation was awarded. On appeal to the Industrial Court, sitting en banc, the award was adopted and affirmed.

■ For vacation of the award petition submits the single contention that there is an entire absence of competent medical evidence to sustain the same.

Reports of three physicians were admitted at the hearing on determination of permanent disability. Dr. G., a psychiatrist, who examined claimant for the petitioner, evaluated the overall (both physical and neurological) residual condition as a result of the injury at 15 per cent permanent partial disability, remarking that further treat-

ment of the neck might be pursued at the suggestion of Dr. F., an orthopedic surgeon. Dr. F., another physician for petitioner, stated in his final report (subsequent to that of Dr. G.) that no further treatment was "indicated;" he fixed the degree of permanent partial disability at 10 per cent.

A third physician, Dr. O., a specialist in neurology and psychiatry, submitted his report for the claimant. The pertinent portion thereof reads:

"Neurological examination revealed * * * impairment of sensation on the left side especially of the left arm.

"Further physical examination revealed evidence of injury to the muscle of the left neck and shoulder * * * and a scar over the top of the head as a result of a laceration to the scalp * * *.

" * * * there was increased irritability with memory impairment and slowness of thinking. Testing indicated that patient functioned at a higher mental level previously.

"It is my opinion that we are dealing with a case of *chronic* brain syndrome associated with brain trauma. This man apparently sustained a concussion at the time of his injury in 1957 in August with unconsciousness and a dazed condition afterwards and has been under a doctor's care ever since. * * * At the *present* time this man is totally disabled because of his mental condition and his *prognosis is extremely guarded.*" (Emphasis ours.)

Petitioner contends that if an award in excess of 15 per cent permanent partial disability can be sustained by this court as anywhere within the range of medical evidence, it must necessarily rest on the report of Dr. O. It is urged that the report is too vague, indefinite and inconsistent to constitute competent evidence upon which to base an award in that it is not clear whether Dr. O. had reference to temporary total or permanent total disability.

Petitioner relies on Bergstrom Painting Co. v. Pruett, 205 Okl. 291, 237 P.2d 453;

Sparks v. General Mills, Inc., Okl., 262 P.2d 155; Adams v. Reed Roller Bit Co., Okl., 335 P.2d 1080. We find these decisions distinguishable from the case under consideration.

In Sparks v. General Mills, Inc., supra, we found the probative value of the medical report vitiated by the physician's vague and inconsistent statement as to "anticipated" future disability, while in Bergstrom Painting Co. v. Pruett, supra, we held that an award must be predicated on evidence of present disability and cannot be calculated on speculation and conjecture as to future disability. Our decision in Adams v. Reed Roller Bit Co., supra, rests on a fatal conflict between the physician's conclusion and the preceding contents of his report.

In the case at bar the doctor did not state claimant required continued treatment so as to indicate that the healing period had not yet ended and temporary total disability subsisted. Neither did he say merely that claimant would improve in time and then attempt to forecast the extent of disability after such future amelioration. To the contrary, Dr. O. stated claimant was totally disabled "at the present" and diagnosed the brain injury as a "chronic" condition. While it is true that the word "permanent" is not shown in the concluding evaluation of "present disability," its absence or omission does not, in our view, destroy the probative value of the report, since the diagnosis amply denotes a state of permanency. The word "chronic" is variously defined as "deep-rooted; lingering; of long continuing duration; characterized by slowly progressing symptoms; constant; and continuing." The adjective "permanent" means: Continuing or enduring in the same state without fundamental or marked changes. See, Webster's New International Dictionary, Second Edition.

Neither does the remark relative to "guarded prognosis" appear in our opinion to be in discord with the preceding context of the report. Rather, it lends support to the same by pointing out the improbability of further recovery.

■ Were we to hold, as petitioner urges, that the mere mention of prognosis rendered the report of Dr. O. vague, indefinite and inconsistent in the sense that it negates the existence of permanent disability, it would logically follow that a person who is permanently disabled must remain in an immutably static condition and may not have a prognosis—a conclusion clearly incongruous with recognized medical and legal verities. Our statute (85 O.S.1951 § 28) contemplates that a change of condition for the better or for the worse may arise after determination of permanent disability.

■ We have previously held that where a physician has fixed the degree of present permanent disability, his further comment on probable developments in the condition of claimant does not operate to vitiate the effect of his entire testimony. Medical evidence is fatally deficient and without probative value if the same is silent as to the degree of present existing permanent disability. However, a physician's opinion need not be couched in precise language of the statute, and the evidence is sufficient where the presence and extent of permanent disability is revealed from a consistent context of his testimony or report. Dolese Bros. Co. v. McBride, Okl., 268 P.2d 268; Ridenour v. Van Pick Oil Co., Okl., 289 P.2d 135, and Skelly Oil Company v. Admire, Okl., 293 P.2d 349.

■ The State Industrial Court is free to determine the degree of disability within the range of medical evidence. Ridenour v. Van Pick Oil Co., supra.

There is competent medical evidence reasonably tending to support the finding of the State Industrial Court that claimant sustained 70 per cent permanent partial disability as a result of his accidental injury.

Award sustained.