**KLEENER COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**Granvil HAMILTON, and the State Industrial Court for the State of Oklahoma, Respondents.**

**No. 39440.**

Supreme Court of Oklahoma.

July 5, 1961.

Wayne B. Snow, of Savage, Gibson,. Benefield & Shelton, Oklahoma City, for petitioners.

Claud Briggs, Oklahoma City, for respondents.

BLACKBIRD, Vice Chief Justice.

Challenged by the employer, as lacking evidentiary basis, are the trial tribunal's findings relative to the extent of claimant's temporary and permanent disability.

On October 15, 1955, claimant admittedly sustained an accidental injury to his back while engaged in employer's coal mine at Bokoshe, Oklahoma. He received extensive hospital and outpatient treatment from Dr. K. of Fort Smith, Arkansas, in whose active care he remained until about December 5, 1956. On his final examination, Dr. K. estimated claimant's permanent disability at 10 per cent to the body as a whole, and recommended that the condition be re-evaluated by certain orthopedic specialists in Tulsa or in Oklahoma City. Pursuant to this direction, claimant presented himself to Dr. O. of Oklahoma City, who first saw him on February 12, 1957. Dr. O. advised further "hospitalization in pelvic traction and medication followed by support and exercise" which "might result in considerable improvement." Another physician, Dr. G., who examined claimant on the same day, also concluded that claimant should have "further treatment in the low back" since he was "still temporarily totally disabled and should be under active orthopedic care". When claimant, for the second time, reported to Dr. O. on May 28, 1957, the physician again suggested "a further period of hospitalization for traction for three weeks with absolute bed rest". On July 5, 1957, Dr. O. caused claimant to be admitted to a hospital in Oklahoma City, where he remained until July 28 of that year. On his release, claimant was advised to return on August 8, 1957, for a recheck at the office. On August 29, 1957, Dr. O. reported that claimant "has practically recovered from his side complaints of his head and shoulders" and will be re-checked in six weeks. In his next statement, dated October 14, 1957, Dr. O. gave this evaluation of claimant's condition at that time:

"* * * We have exhausted the armamentarium of non-surgical treatment and I am recommending that he have surgical treatment to his low back which would consist of removal of the disc and since he does have degeneration of the joint, fusion of the involved joint. Should he elect not to accept surgery, I know of no particular treatment of importance other than the things he is doing, wearing a support, sleeping on a hard bed, using local heat, avoiding long hours on his feet, etc." (Emphasis ours.)

The opinion, so given, was further clarified by Dr. O.'s testimony on January 27, 1958, in which he concluded:

"I don't feel that he has reached the end of his healing period in that he can be operated and much improved, but short of surgery I think he has reached to where he will get; if he is not operated I think he has reached the end." (Emphasis ours).

Claimant apparently elected not to submit to surgery. His refusal is not challenged here as arbitrary or unreasonable within the rule announced by this court in Monday v. Concho Sand & Gravel Co., Okl., 332 P.2d 965.

On March 19, 1958, claimant was again seen by Dr. O., who then found "an acute exacerbation of his trouble", but felt that "another period of hospitalization for bed rest and traction * * * would do him no more permanent good than it did before". Dr. O. gave claimant some medication for his "acute pain". This flare-up, which lasted only "two or three weeks" had not recurred, and the condition reverted to its former stage of October 14, 1957. Upon his last examination on January 5, 1959, conducted at the request of the employer, Dr. O. reported:

"He states that since I saw him in March 1958 he has not had any recurrence of his back trouble. The attack at that time lasted two or three weeks and has not recurred. * * * I think that from time to time he will have trouble with this back, and that this will

be particularly excited by constant lifting and stooping. Therefore, I think he should adjust his work to such work that does not require stooping and lifting heavy objects, or shovelling. * * * He probably will ultimately require stabilization of this low back if he wants to continue heavy work."

Employer discontinued payment of temporary total disability on November 5, 1956. Claimant sought allowance for medical treatment rendered by Dr. O., and further compensation for temporary disability. The trial judge found on March 14, 1958, that claimant's temporary disability ceased on November 16, 1956, and denied compensation beyond that date. The order, so made, was vacated on appeal by the trial tribunal en banc and the cause was remanded for hearing "on all issues, including temporary partial and permanent disability." The trial judge's second order, entered on July 9, 1959, denied claimant any additional compensation, either for temporary or permanent disability. On appeal to the State Industrial Court en banc, the order was again vacated and an award entered granting claimant 102 weeks' compensation for temporary partial disability and 125 weeks' compensation for 25 per cent permanent partial disability to the body as a whole.

In the present proceedings, finally at issue here on June 1, 1961, employer challenges the award of the trial tribunal en banc and submits that the findings as to the extent of claimant's disability, both temporary and permanent, are unsupported by any competent evidence.

The award of the trial tribunal allowed claimant compensation for temporary partial disability from February 12, 1957, to January 5, 1959. It is true that between these dates claimant was intermittently seen by Dr. O., but his healing period did not extend over this entire span of time. According to the unmistakable tenor of Dr. O.'s testimony, as recited, claimant's condition, as to permanency, became stationary on October 14, 1957. It is clear that he had at that point reached optimum recovery "short of surgery", and he could not be further improved by application of any conservative measures. After October 14, 1957, no additional treatment was either indicated or rendered except during the period of "two to three weeks" in March of 1958, when claimant suffered a temporary exacerbation. When this setback cleared up, no other flare-ups followed and there was no need for any curative measures or further medical attendance.

■ The disability of an injured workman *during his healing period* should be compensated either as temporary total, or temporary partial disability, in accord with the facts. National Well Service v. Brumley, 204 Okl. 190, 228 P.2d 638; Fullhart Maytag Co. v. Stapleton, Okl., 356 P.2d 350. The healing period is not always continuous and uninterrupted. Temporary incapacity may fluctuate and recur from time to time even after the condition has reached a state of permanency. Amerada Petroleum Corp. v. White, 179 Okl. 82, 64 P.2d 660; Pittsburg Plate Glass Co. v. Davison, 190 Okl. 228, 122 P.2d 388. Under the evidence adduced in the instant case, claimant's healing process extended from February 12, 1957, to October 14, 1957 (when conservative treatment was exhausted and discontinued), but he was later temporarily and totally disabled during the "two to three weeks" period of the above-mentioned "acute exacerbation", in 1958. The award of temporary partial compensation beyond October 14, 1957, is therefore erroneous and not substantiated by competent medical evidence. See Park-Ward Const. Co. v. Newlin, 186 Okl. 26, 95 P.2d 848. After that date, claimant's condition fluctuated between partial permanent disability and temporary total disability.

■ Employer further urges that the award for 25 per cent permanent disability to the body as a whole rests on "inconsistent evidence". Dr. O. estimated claimant's present permanent disability at 40 per cent to the body as a whole. He noted,

however, that unless surgery is performed this condition will probably undergo a variation in the future from 20 per cent to 100 per cent. The testimony so given is not "fatally inconsistent", nor does it lack probative value. A physician's comment relative to probable future developments in claimant's condition does not necessarily operate to vitiate his opinion as to the degree of present existing permanent disability. Kerr-McGee Oil Industries, Inc. v. State Industrial Comm., Okl., 337 P.2d 730. Bill Morris Tank Co. v. Martin, Okl., 349 P.2d 15; Woodward & Co. v. State Industrial Comm., Okl., 349 P.2d 638. In view of the foregoing, we are of the opinion that an award of 25 per cent partial for claimant's permanent disability is within the range of, and supported by, competent medical evidence.

However, when any portion of an award is not in accord with the evidence, this court may direct the State Industrial Court to enter such award as is warranted by the record. Richards v. State Industrial Comm., 143 Okl. 29, 287 P. 69; Integrity Mut. Cas. Co. v. Garrett, 100 Okl. 185, 229 P. 282. See also, Bowling v. Blackwell Zinc Co., Okl., 357 P.2d 1009; Foster Wheeler Corp. v. Bennett, Okl., 354 P.2d 764.

In accord with the foregoing, the award for temporary partial disability is hereby modified to allow such compensation from February 12, 1957 to October 14, 1957. It is vacated only insofar as it grants benefits of temporary partial compensation beyond that date, with directions to determine the length of claimant's temporary total disability during his exacerbation episode in 1958, and to readjust the schedule of weekly benefit payments under the award for permanent partial disability so that the same will in no wise be concurrent with the accrual of temporary total disability benefits.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.