OKLAHOMA GAS & ELECTRIC CO., a Corporation, and American Surety Company of N. Y., a Corporation, Petitioners,

v.

STATE INDUSTRIAL COURT, and Roy Edward McGraw, Respondents.

No. 39510.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Kay Wilson, Muskogee, for petitioners.

Harold R. Shoemake, Muskogee, for respondents.

JACKSON, Justice.

Under challenge, as contrary to law and unsupported by any competent evidence, is the trial tribunal's finding that claimant's condition had undergone a change for the worse since the entry of the last prior award. A detailed chronological outline of the entire record appears necessary to a proper consideration of the issue presented.

The accident which gave rise to the original claim took place on February 9, 1956. While on the job at employers' Riverside Plant claimant was helping several other coworkers to carry a heavy steel beam (weighing approximately 500–600 pounds), when one of the men stepped over or upon an obstruction. As this occurred, the beam tilted and a considerable portion of its weight shifted to the claimant, who, bending forward and flexing the knees, twisted his body toward the left. He immediately felt a "sharp pain" in the lower back. On the following morning he was referred by the employer to Dr. F., who initially applied adhesive strapping to the lower back region. This was removed four or five days later. Claimant also received heat therapy every day for about a week and, at less frequent intervals, for another two weeks. Active treatment by Dr. F. ended on February 28th. About March 1, claimant resumed construction work in the employ of another company. Though he continued on duty for 29 days, he actually worked only 17 days. Because of severe and constant pain in the back he quit this employment before the job was completed.

While engaged in the construction work he was seen almost daily by Dr. H., a neuro-surgeon, whom he had first consulted on his own initiative about February 21, 1956. Unable any longer to do manual labor, claimant secured on April 2, sedentary type of work as a salesman for a local automobile dealer. Remaining continuously under the care of Dr. H. claimant was hospitalized for eight days on April 20. During his confinement he lay in traction on a (hard) board placed under the mattress and received hot packs to the lower back region. Muscle relaxant drugs were also administered. A myelogram then performed at the direction of Dr. H. failed to disclose "any marked abnormal boney pathology" or evidence of a ruptured disc. Although claimant appeared to respond favorably to the treatment so received, the pain recurred almost immediately on his discharge. He was unable to do any work which necessitated "being on his feet for any length of time". About once a week following his release from the hospital, Dr. H. has injected his back with novocain and hydrocortisone. Upon a re-examination of claimant on May 14, Dr. F. reported to the employer:

"In the beginning, he had discomfort across the lumbo-sacral region; later, in the region of the right sacro-iliac joint. At the present time he does not have any discomfort in either of these areas, but his discomfort is in the lower portion of the left sacro-iliac joint * * * Examination on this date does not disclose any objective symptoms of any kind; his symptoms are entirely subjective. * * * *The variability of his symptoms as to location makes one suspect the possibility of an inflammatory situation;* this may have been aggravated by the type of (construction) work he was doing." (Emphasis ours.)

On May 7, claimant returned to his employment as a car salesman, but had to quit

this job on July 15, because he was no longer able to do any work. Dr. N., another physician engaged by the employer, examined claimant on August 15 and found "no evidence of an injury to the lower back" and no need for further treatment. From September 15 to November 13, claimant was engaged in selling cars. As the pain in the back persisted with increased intensity, he was again hospitalized from November 14 to November 21. This time he underwent a laminectomy in course of which "an intervertebral disc was removed from the left side between L–4 and L–5." The surgery was performed by Dr. H. with the assistance of Dr. F. In the report of December 12, 1956, Dr. H. stated:

"In view of the atypical nature of this man's *subjective and objective findings, I am inclined to think that he should obtain an excellent result from this procedure. Post-operative diagnosis: herniated disc, L–4 and 5, that had not torn through the anterior spinal ligament. It was both my opinion and that of Dr. F. that it was reasonable to assume that patient's symptoms were a result of these findings."* (Emphasis ours.)

Upon his discharge from the hospital, claimant returned, on November 24th, to his work as a car salesman, but he continued under the out-patient care of Dr. H. About December 31, 1956, he was seized with a sudden episode of lumbago with extremely severe pain. He had to walk with his body flexed forward and to the left. It took about a month before he could straighten up. Shortly prior to this episode he was seen on December 28, by Dr. D., an orthopedic surgeon. According to the opinion of this physician, claimant "had received (a) moderately severe injury to the *lumbar spine* and complained of symptoms (with) reference to those simulating a herniated nucleus pulposus".

Following three hearings upon the claim, the trial commissioner appointed, on March 20, 1957, a neutral examiner, Dr. M. This physician evaluated claimant's permanent

(partial) disability at 13 per centum to the body as a whole "because he will always have some pain and soreness in the lower back" as a result of his accidental injury. On April 15, 1957, an award was entered granting claimant compensation for the degree of permanent (partial) disability found by Dr. M. Neither party appealed from this award and it became final.

The present proceeding to reopen on the ground of a changed condition was instituted by claimant on August 16, 1960. It culminated in an award entered on November 23, 1960, which granted him additional compensation for an increase of 37 per centum in the permanent (partial) disability to the body as a whole.

The pivotal issue formed before the trial tribunal in the proceeding under review was whether, as a result of his compensable injury, claimant has a herniated disc in the lumbo-sacral spine between L–5 and S–1, which condition has produced increased disability; and if so, whether this pathology prevailed in its present stage of development at the date of the original award on April 15, 1957.

The medical evidence consists of two letter-reports. For the claimant, Dr. J., an orthopedic surgeon, related that (a) "(T)he x-rays show no evidence of attempted or spontaneous fusion at the lower lumbar levels"; (b) claimant "has a herniation of the lumbo-sacral intervertebral disc to the left"; (c) "(T)he surgical indications are for the excision of the lumbo-sacral intervertebral disc and fusion of this level"; (d) the present condition is "static unless further surgery is undertaken"; (e) "a fair estimate of his (claimant's) present condition would be a 50% loss of total bodily (function) as regards ordinary manual labor". In the opinion of Dr. R., who submitted a report for the employer, claimant "does not show any evidence of nerve root irritation" at the lumbo-sacral level and requires no treatment or surgery. Claimant's complaints were attributed by Dr. R. to "a common post-operative finding followed (from an) operation for a ruptured disc".

The results of claimant's laminectomy were, according to this physician, "better than some that we see although he still has some symptoms." Dr. R. evaluated the present condition at 15% permanent (partial) disability to the body as a whole.

As disclosed by claimant's testimony, he had been suffering constant and severe pain, was not able to do any manual labor and was again engaged in selling cars.

Employer asserts the award for additional disability is unauthorized by law because, as shown by the evidence, claimant's condition had remained static since the entry of the prior award. The contention so advanced rests on an analytical comparison of the physical findings disclosed by the medical experts prior to the entry of the award on April 15, 1957, with those contained in the report of Dr. J., upon whose opinion additional compensation was granted. We are urged on the basis of this comparison that no interim change of condition has been demonstrated and there exists no legal ground for an increased award. The pivot of employer's argument is that Dr. J. had formed an identical opinion of claimant's condition as early as September 3, 1956, and although the findings made on his initial examination are not in the record, they are incidentally mentioned in his report submitted to the trial tribunal in the present proceeding. It is therefore apparent, the argument follows, that the lumbo-sacral pathology was in existence and known prior to the entry of the last award and, if Drs. H. & F., through an error or oversight, operated on the wrong disc, their mistake as to the actual facts at that time may not be corrected on the theory of a change in condition. Employer relies on Barnsdall Oil Company v. State Industrial Commission et al., 178 Okl. 289, 62 P.2d 1031, and Wetherbee Electric Co. et al. v. Collier et al., 180 Okl. 473, 71 P.2d 312.

The most we can assume from the record is that Dr. J. did, on his earlier examination of claimant in September, 1956, suggest the mere possibility of a disc herniation between L–5 and S–1. There is no indication that, either then or at the time of the original award, the lumbo-sacral pathology, if diagnostically ascertainable, was in an active state of producing discomfort or disability. The evidence, viewed as a whole, clearly points to the contrary. The postoperative reports of Drs. H. & F. (the salient portions of which are recited above) make no reference to any active neurological pathology at that level and attribute the pattern of symptoms, both objective and subjective, to the herniation between L–4 and L–5. Neither does Dr. D. suggest any other source of discomfort or disability. Even the neutral examiner, Dr. M., who was the last physician to examine claimant before entry of the original award, reported no "typical symptoms" of nerve root irritation. The history of the injury reflects that from its very inception the back pathology has been characterized by considable variability of symptoms, both as to their location and intensity. The fluctuations ranged all the way from intervals of latent quiscence to inflammatory periods of exacerbation. It is entirely reasonable to infer from the proof that some process of progression occurring in the interim (since the last award) has advanced the latent neurological condition in the lumbo-sacral interspace to an active, acute and disabling state. There is therefore competent evidence to show that claimant's lumbo-sacral disc pathology constituted a new factor manifesting itself in a more pronounced stage of development. Moreover, the finding of a change in condition is further supported by the undisputed proof that there was no spontaneous fusion at the lower lumbar level following the laminectomy operation, and that the resulting instability of the spine has contributed to an increased disability. Skelly Oil Company v. Sumner, Okl., 347 P.2d 219; United States Gypsum Company v. Pendleton, Okl., 340 P.2d 467; Sappington-Hickman, Inc. v. State Industrial Commission, Okl., 262 P.2d 707; General Acc. Fire & Life Assur. Corp. et al. v. Mowry et al., Okl., 262 P.2d 421; Phillips Petroleum Co. v. Anguish et al., 201 Okl. 691, 209 P.2d 689; Evans-Wallower

Lead Co. v. Dry et al., 178 Okl. 48, 61 P.2d 561.

■ The authorities relied upon by the employer are not applicable to the cause under review. In those cases the condition of the injured employee had remained static. The change shown was merely in the medical evaluation of identical disability. This, as noted earlier, is not the case here. The law does not require that a change from a former condition be in all instances apparent from observation or examination by an ordinary layman. Nor is it necessary that the change rest solely on objective medical findings. It is sufficient if, as here, a different condition, not ascertainable before in terms of its effect on disability, unfolds itself to the expert witness in the light of subsequent developments. Lumbermen's Supply Co. v. Mackey, 201 Okl. 296, 205 P. 2d 870. Standish Pipe Line Co. v. Kirkland et al., 188 Okl. 248, 107 P.2d 1024; Wilcox Oil & Gas Co. et al. v. Satterfield et al., 178 Okl. 418, 63 P.2d 696; Cf. Southern Drilling Co. et al. v. Daley et al., 166 Okl. 33, 25 P.2d 1082.

■ Although nowhere in his report did Dr. J. specifically state that claimant's condition had undergone a change for the worse since the original award, the probative value of his testimony remains unimpaired. A physician need not give his opinion in categorical terms nor in the precise language of the statute. Woodward & Co. v. State Industrial Comm., Okl., 349 P.2d 638. A finding of the trial tribunal rests on competent evidence when it is supported by the general tenor and intent of the expert testimony. Fullhart Maytag Company v. Stapleton, Okl., 356 P.2d 350, 355; Sappington-Hickman, Inc. v. State Industrial Commission, supra. We find the tenor of Dr. J.'s report, considered with the history of injury as recited, to amply indicate an increase of disability due to a progression in claimant's back condition.

■ Neither do we find merit in employer's contention that the evidence shows no change in condition, because both at the time of the original award and at the hearing on the motion to reopen claimant testified he was suffering pain and was unable to do any manual labor. This fact does not operate in law to bar claimant from showing a change in condition, nor does it preclude the trial tribunal from considering and according credence to the testimony so adduced. Indian Territory Illuminating Oil Co. v. State Industrial Commission, 185 Okl. 72, 90 P.2d 398; Stanolind Pipe Line Co. v. Brewer, 185 Okl. 578, 95 P.2d 625; O. C. Whitaker, Inc., et al. v. Dillingham et al., 192 Okl. 150, 134 P.2d 588; United States Gypsum Company v. Pendleton, supra.

■ Lastly, employer urges that the finding of 50% permanent (partial) disability (or an increase of 37%) was erroneous since Dr. J. noted in his report that, with an excision of the lumbo-sacral disc and lumbar fusion, the overall condition "would be decreased to about 25%." The testimony so given does not nullify the probative force of his evaluation. A physician's comment relative to probable future developments in claimant's condition does not necessarily operate to vitiate the effect of his opinion as to the degree of present existing permanent disability. Kleener Coal Company v. Hamilton, Okl., 363 P.2d 373, 377; Woodward & Co. v. State Industrial Comm., Okl., supra; Bill Morris Tank Co. v. Martin, Okl., 349 P.2d 15; Kerr-McGee Oil Industries, Inc. v. State Industrial Comm., Okl., 337 P.2d 730.

Employer relies on Moran v. Oklahoma Engineering & Machine & Boiler Co. et al., 89 Okl. 185, 214 P. 913, and invokes the rule that a claimant is under an obligation to avail himself of all reasonable remedial measures to minimize the consequences of his injury. The cited decision has no application to the facts in the present cause. There is no showing here that a tender of an operation was made by the employer at any stage of the proceeding, nor does it even appear that its refusal by claimant would have been unreasonable under our holding in Monday v. Concho Sand & Gravel Co., Okl., 332 P.2d 965; see also E. L.

Mendenhall Company v. Kell, Okl., 359 P.2d 234.

The award is not otherwise challenged. We find it free from errors of law and supported by competent evidence.

Award sustained.