AMERICAN PLATING COMPANY and The
State Insurance Fund, Petitioners,

v.

Ross D. ENGLE and the State Industrial
Court of the State of Okla-
homa, Respondents.

No. 40901.

Supreme Court of Oklahoma.

Nov. 24, 1964.

Mont R. Powell, Moraul Bosonetto, Oklahoma City, for petitioners.

Kennedy, Kennedy & Bushman, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

JACKSON, Justice.

This is an original proceeding by American Plating Company, employer, and its insurance carrier, The State Insurance Fund, for the review of an order of the State Industrial Court awarding compensation to Ross D. Engle, claimant.

The claim was filed under the occupational disease provisions of the Workmen's Compensation Act. After hearing the evidence, a trial judge entered an order finding:

"That claimant sustained an . accidental personal injury arising out of and in the course of his hazardous employment with the above named respondent, within the terms and meaning of the Workmen's Compensation Law, on October 2, 1963, consisting of occupational disease, partial destruction of nasal passage, eyesight, lung and mental disturbances, and ears. That at the time of said injury, claimant's wages were sufficient to fix his rate of compensation at $37.50 per week * * *. That as a result of said injury, claimant

sustained no P.P.D. to his ears, eyes, nose or dermatitis; and that claimant sustained no P.P.D. by reason of any mental or emotional disturbance by reason of the occupational disease. That as a result of said injury, claimant has sustained 20 per cent permanent partial disability to his lungs * * *."

The State Industrial Court en banc on appeal modified the above order as follows:

"That claimant sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above respondent within the meaning of the Workmen's Compensation law consisting of occupational disease, the last exposure being Oct. 2, 1963, resulting in partial destruction of nasal passage, eyes, lungs and mental disturbances and ears. IT IS THEREFORE ORDERED that in all other respects that the Order of Jan. 16, 1964, remain the same as written by the Trial Judge."

In this court, petitioners (employer and insurance carrier) present two propositions, as follows: (1) that the court erred in finding that claimant suffered "partial destruction of nasal passage, eyes, lung, and mental disturbances, and ears"; and (2) that the court erred in fixing claimant's compensation rate at $37.50 per week.

Under the first proposition petitioners argue that there is no competent evidence to support the findings as to the "nasal passage, eyes, lung, and mental disturbances, and ears". This argument assumes that the award in this case must rest upon competent evidence of damage of all of the kinds listed, and that in the absence of such evidence the award must be vacated.

Such is not the case. Assuming for purposes of argument only that there is no competent evidence of disability to the eyes, ears or nasal passage, or of any mental disturbances, the award must still be sustained as to the disability to the lungs. As to the other "results" of the occupational disease, the order as modified specifically found that

no permanent partial disability ensued. The error, if any, was therefore harmless. As modified by the court en banc, the award should now be read as follows:

"That claimant sustained an accidental personal injury, arising out of and in the course of his hazardous employment with the above respondent within the meaning of the Workmen's Compensation Law consisting of occupational disease, the last exposure being Oct. 2, 1963, resulting in partial destruction of nasal passage, eyes, lungs and mental disturbances and ears. That at the time of said injury, claimant's wages were sufficient to fix his rate of compensation at $37.50 per week * * *. That as a result of said injury, claimant sustained no P.P.D. to his ears, eyes, nose or dermatitis; and that claimant sustained no P.P.D. by reason of any mental or emotional disturbance by reason of the occupational disease. That as a result of said injury, claimant has sustained 20 per cent permanent partial disability to his lungs * * *."

It is thus readily apparent that compensation was awarded for permanent partial disability to the body by reason of injury to the lungs only. We think petitioners have raised their arguments under the first proposition because of a misconception that the first quoted sentence of the modification order was intended as a substitute for both the first and third sentences of the quoted portion of the trial judge's original order. However, the first sentence of the modification order and the first sentence of the trial judge's original order deal with essentially the same subject matter, and the third sentence of the trial judge's order was left intact by that portion of the modification order which directed that "* * *. in all other respects the Order of Jan. 16, 1964, remain the same * * *".

There is competent medical evidence to support an award for permanent partial disability to the body by reason of the injury to the lungs resulting from occupational disease. Claimant's work was in connection with a metal plating process and he worked in the presence of, and inhaled, fumes of

chromic, nitric and muriatic acid. Muriatic acid is a commercial grade of hydrochloric acid. In a report dated Nov. 16, 1963, claimant's medical witness, Dr. D., recounted the conditions under which claimant worked and added "There is no question that this man has had toxic damage to the respiratory tract producing a permanent change". In a later report he said:

"* * * I feel that he is no longer able to work where there is exposure to cold, smoke, or fumes of any kind. It is, therefore, necessary for him to work indoors and his job would have to be away from the presence of any toxic agent or fumes. I do not know how to estimate the disability from the possibility of lung cancer which is suggested as one of the complicating features in the pathology textbooks. He may not develop this abnormality. Since the disability is respiratory rather than functional in terms of the hands or legs I would estimate his disability at 20%."

In a report dated Nov. 4, 1963, Dr. M., testifying for employer and insurance carrier, noted "Lungs normal" under the heading "Physical Examination". However, the same report included the following language:

"* * * Xray of chest made October 29, 1963 shows heavy hilar shadows and a cluster of calcifications in the left hilus between the second and fourth anterior ribs. There is a rather large irregular area of increased density in the third interspace, left, near the periphery which is due to calcification in the parenthyma of the lung. The lung fields are *otherwise* normal. * * *." (Emphasis supplied)

 We think the above summarized evidence is a sufficient basis for an award of compensation for permanent disability to the body by reason of injury to the lungs resulting from occupational disease. While Dr. D's reference to "respiratory tract", standing alone, might be insufficient evidence to support an injury to the lungs, we think the later and more specific reference to the lungs makes his meaning clear. The words "tract" and "system" have analogous definitions; and "respiratory system" is defined in Webster's Third New International Dictionary Unabridged as "a system of organs subserving the function of respiration and in air-breathing vertebrates consisting typically of the lungs and their nervous and circulatory supply * * *". See Oklahoma Gas & Electric Co. v. State Industrial Court, Okl., 366 P.2d 609, wherein this court held:

"A physician's opinion need not be given in categorical terms nor in the precise language of the statute, and an award of the State Industrial Court rests on competent evidence when it is supported by the general tenor and intent of the medical testimony."

We hold that the general tenor and intent of the medical testimony in this case supports the findings of the State Industrial Court.

Petitioners' second proposition (error in the compensation rate used) arises by reason of the fact that, effective May 27, 1963, the Oklahoma Legislature amended 85 O.S.1961, § 22(5), by raising the maximum amount of weekly payments for permanent disability from $30.00 per week to $37.50 per week. Petitioners argue that claimant's condition manifested itself prior to May 27, 1963, and that the maximum payments in this case should be limited to $30.00 per week. Claimant argues that the last hazardous exposure to the occupational disease was on Oct. 2, 1963, and that his payments should be $37.50 per week.

 We have carefully examined the evidence on this point, and we find no competent evidence of a lung condition amounting to an occupational disease prior to May 27, 1963. While claimant did testify that he had "some lung trouble about three years ago", this lung trouble was not medically identified as an occupational disease. We are therefore unable to conclude that the

occupational disease arose prior to the amendment of the statute.

The award is sustained.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.