**GROENDYKE TRANSPORT, INC., and Truck Insurance Exchange, Petitioners,**

v.

**Ronald WILLSON and State Industrial Court of the State of Oklahoma, Respondents.**

**No. 46814.**

Supreme Court of Oklahoma.

Oct. 29, 1974.

H. A. Bud Carter, Oklahoma City, for petitioners.

Buck Cartwright, Wewoka, for respondents.

DOOLIN, Justice.

This proceeding seeks to vacate a trial judge's order, affirmed by State Industrial Court en banc, awarding compensation for permanent total disability from accidental injury sustained in course of covered employment with petitioner, hereafter the respondent. The issues for review concern relevancy and sufficiency of medical evidence to support the award. Further error allegedly resulted from failure to grant respondents' motion to appoint a disinterest-ed medical expert, to examine and evaluate nature and extent of claimant's disability. Nature of respondents' argument dictates extended review of medical evidence.

Jurisdictional questions, facts of accidental injury and subsequent hospitalizations and surgeries are either stipulated or undisputed. Injury resulted from accident, which occurred in northeast Texas panhandle while claimant was operating respondents' gasoline transport tractor-trailer returning to Enid, Oklahoma, the night of October 6, 1972. After delays occasioned by the accident claimant arrived home and went to bed. Because of worsening condition claimant reported to respondent's doctor (Dr. J.) on October 11 and thereafter was seen by Dr. S., who immediately referred claimant to Dr. A. After examination and x-rays a cervical neck brace was fitted and claimant advised to return in two weeks. It was noted claimant also had lumbar strain associated with spondylolisthesis of lumbar spine.

Increasing pain in arms, shoulders and neck necessitated early return to Dr. A. Claimant was hospitalized immediately and placed in traction by Dr. J. B. J. for approximately one week. Claimant was released and that same day (November 6, 1972) transferred to an Oklahoma City hospital under care of Dr. H. B. T., a neurosurgeon, who diagnosed claimant as "a soft cervical disc" and arranged for myelogram studies to ascertain need for surgical intervention. On November 8, 1972 the surgeon performed extensive surgery (hemilamectomy and dissectomy at C6–7, and foraminotomy and nerve root decompression C5–6). Claimant was discharged November 18 under pain medication and directions not to perform physical labor. The surgeon's report of November 21, 1972, stated claimant's problem was very bona fide, but motivation for return to work at reasonable time probably unenthusiastic.

This physician re-examined claimant December 15, in consultation with another neurosurgeon. The report stated positive aspects of surgery had relieved pre-opera-

tive right upper extremity pain. Part of claimant's examination either was completely hysterical or the result of malingering, since some complaints were of functional type, which did not correlate to any neurological pattern.

Re-examination January 5, 1973, disclosed claimant had not done well, suffered pain across neck and posterior of right arm and pain from bending head (Lehrmitte's syndrome) with some atrophy of right arm. The doctor reported claimant gave hysterical performance upon effort to objectively test muscles. Claimant was to be rehospitalized January 15, 1973, for physical examination, with orthopedic and psychiatric consultation, to determine whether complaints were functional or organic.

Dr. H. B. T. reported (February 9, 1973) results of further surgery performed January 22, 1973, following electromyogram and extensive nerve studies which revealed presence of defects from prior surgery, with significant defects on a borderline narrow cervical canal. Claimant underwent anterior cervical dissectomy and inter-body fusion at site of prior surgery with full thickness right iliac bone graft. Post-operative course was uneventful and claimant was discharged February 3, 1973, for follow-up examination. Examination revealed excellent placement of bone grafts with good alignment of cervical spine. Claimant's medical problems were bona fide, with certain aspects of hysterical personality.

After examination March 2, 1973, this physician reported claimant's disc and fusion in good alignment with fusion taking place, with less pain in neck and primary problem involved low back trouble at site of previous surgery unrelated to current injury. Results of cervical operation would be satisfactory, although it was anticipated claimant would not want to return to work.

Dr. J. B. J. examined claimant March 3 in Enid and reviewed history extensively, including lumbar spine difficulty, detailed history of surgical procedures, and recog-

nized complaints of pain and existing debility. This doctor reported claimant could not be evaluated at that time, and no assessment of permanent partial disability could be made until claimant was released by the neurosurgeon.

Dr. H. B. T.'s last examination (March 16, 1973) reported claimant's major problem was pain radiating down both legs from low back. Examination for results of neurosurgery revealed limited range of neck motion in all planes, with diffuse weakness of entire right upper extremity, although some features of examination suggest hysteria. Compared with other patients who had similar surgery a reasonable healing period had expired. Motivation for return to work was questionable, but claimant was being released March 22, 1973 for return to work. This neurosurgeon evaluated claimant's permanent partial disability as 15% to the body as a whole.

Medical evidence for claimant consisted of the written report of orthopedic study from Dr. K., following examination. This report reviewed claimant's prior medical history and history of accidental injury, detailed resumé of treatment and surgical procedures reflected by medical reports and hospital records. This comprehensive report reviewed claimant's complaints and evaluated condition upon basis of physical examination and x-ray studies carried out October 6, 1973. Claimant's primary trouble was the cervical condition, with low back involvement a secondary cause of difficulty. Claimant remained temporarily totally disabled from accidental injury, and in need of further evaluation and treatment because of gross cervical injury. Without complete fusion of cervical vertebrae, the some dorsal vertebrae, claimant's condition could not be relieved. The medical report concluded:

"Without further recommended treatment, it is my opinion, that due to the condition of his neck standing alone he has 100% permanent partial disability to the body as a whole and is permanently

and totally disabled in doing ordinary manual work as a result of the accident on October 6, 1972. He is certainly unemployable at any type of work in his present condition. Even so, in my opinion, the results of further surgery to his neck is very doubtful of any great relief."

Two contentions urged by respondents attack sufficiency of claimant's medical evidence to support this award. The first claims trial court error in admitting into evidence Dr. K's medical report, because inconsistent, equivocal and ambiguous and therefore insufficient to support an award. Adams v. Reed Roller Bit Co., (Okl.) 335 P.2d 1080. The second claims this award is contrary to and unsupported by competent evidence, and an award based upon material findings of fact unsupported by competent evidence must be vacated. Saber Oil Co., Inc. v. Smedley (Okl.) 496 P.2d 793.

Supporting argument is advanced upon basis of respondents' analysis of the import of medical evidence as showing claimant's temporary total disability, but failing to establish a present degree of permanent disability. And, respondents say this is particularly true because the doctor stated disability from neck injury alone created 100% *permanent partial disability,* which is a degree of disability unknown to compensation law. On this basis respondents assert the medical evidence must be treated as incompetent, because expressing diametrically opposed conclusions, leaving the record devoid of medical evidence to support an award for permanent total disability.

 An elementary concept requires that nature and extent of disability from accidental injury must be established by testimony of skilled professional persons. And, there must be evidence of present permanent disability, rather than conjecture and speculation as to possible future disability. However, where medical opinion is sufficient to show degree of present disability, a physician's further statements as

to claimant's physical condition do not destroy probative value of the medical evidence. See Dolese Bros. Co. v. McBride (Okl.) 268 P.2d 268.

 Admittedly this medical report is imprecise, and lacking in chronological concept in relation to claimant's disability. These defects are not fatal, however, in view of the settled rule that medical opinion concerning disability need not be expressed with legalistic precision. The controlling criterion is whether from a consistent context a physician's report discloses presence and extent of existing permanent disability resulting from accidental injury. Woodward & Co. v. State Industrial Comm. (Shannon) (Okl.) 349 P.2d 638; Bill Morris Tank Co. v. Martin (Okl.) 349 P.2d 15, and cases cited.

At inception of hearing the court was advised it had not been determined whether claimant's case would be heard as to continuation of temporary total disability if desired by claimant, or for determination of total permanent disability. The medical report of Dr. K. covered each eventuality, and reasonable interpretation of the report establishes these facts hereafter summarized.

When examined claimant remained temporarily totally disabled as result of injuries, and further treatment was recommended. There was no possibility of relief from the neck condition without surgical fusion of cervical vertebrae. Without further surgery the condition of claimant's neck alone resulted in permanent total disability to perform manual labor, without consideration of disability resulting from back injury. Claimant's physical condition precluded employment at any type of work. Prognosis for further surgery providing any great relief was very doubtful.

This interpretation fairly is within consistent context of the physician's report. The complained of phrase " . . . 100% permanent partial disability," whether considered as a mistake, or mere imprecise language, does not destroy either force or meaning of the remaining conclusion. If

the phrase be construed as included by mistake when "total" disability was intended, the ultimate conclusion as to total disability is unquestioned. If the phrase be considered imprecise language which is mere surplusage, the conclusion is the same; without further surgery, condition of claimant's neck alone resulted in permanent total disability, without consideration of secondary problem caused by back injury.

Regrettably, few medical reports are expressed in categorical terms, or in precise language of the statute. Recognition of this fact is basis for the settled principle that medical evidence need not be expressed with legalistic precision, and an award is based upon competent evidence when supported by general tenor and intent of the medical testimony. Cassidy v. Harding (Okl.) 451 P.2d 698. Absent this rule many medical reports would be unacceptable in evidence upon objection as to form, or because of imprecise expression.

In *Shannon*, supra, we reviewed cases in which probative value of physicians' reports were vitiated by vague, inconsistent, speculative or conjectural evidence. Examination of Dr. K's medical report within limits of principles announced in *Shannon*, supra, discloses the fallacy of respondents' argument relative to the report, and lack of substantial merit to the claim this award is not supported by evidence of probative value.

A further contention urges trial court failure to grant respondents' motion for appointment and examination of claimant by an independent medical expert was arbitrary and capricious, and constituted prejudicial abuse of discretion. Respondents assert the great disparity between claimant's medical evidence and that of respondents' specialist, coupled with evidence showing claimant either was hysterical or a malingerer, required appointment of independent medical expert. Thus failure to grant the motion infringed the rule, requiring a full hearing on the issue of disability, stated in syllabus 2, Kansas Explorations, Inc. v. Utton, 199 Okl. 159, 185 P.2d 439,

because no credence was given evidence of respondents' physician. On this basis respondents declare the court's failure to appoint constituted an arbitrary exercise of discretionary power prejudicial to respondents' rights.

Extended discussion of this argument is unnecessary. Basis for the issues advanced has been considered heretofore. The principles stated at length in Drinkwater v. Orkin Exterminating Co. (Okl.) 361 P.2d 834, 835, are dispositive of the matters mentioned. Also see Okla. Furn. Mfg. Co. v. Washington, 180 Okl. 381, 70 P.2d 69. Argument concerning lack of competent evidence to support State Industrial Court finding that there was no need for examination by an independent medical expert does not merit discussion. Trial court refusal to appoint an independent physician to examine claimant was not an abuse of discretion in this case.

Award sustained.

All Justices concur.