**BAMA PIE, LTD., Petitioner,**

v.

**Judy Ann RAES and the Workers' Compensation Court, Respondents.**

No. 83923.

Supreme Court of Oklahoma.

Nov. 7, 1995.

Thomas E. Steichen, David P. Reid, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, for Petitioner.

Karen J. Leonard, Don L. Wyatt, David N. Smith, Wyatt, Austin & Associates, Ada, for Respondents.

OPALA, Justice.

The single issue presented on certiorari is whether the review panel's [panel] order is supported by any competent evidence? *We answer in the affirmative.*

## I

## THE ANATOMY OF LITIGATION

Judy Ann Raes [Raes, claimant or employee], an employee of Bama Pie, Ltd. [Bama Pie or employer], filed a Form 3,[1] listing injury to her left hand and wrist caused by repetitive trauma from popping frozen biscuits from a cardboard tray onto another tray. In his order, filed February 3, 1992, the trial judge ruled (after a hearing) that (a) claimant sustained 25% permanent partial disability from an on-the-job injury to her left hand and wrist; (b) the injury occurred on October 14, 1989 and (c) claimant was temporarily totally disabled for a total period of 9 weeks.

In the spring of 1993 Raes began experiencing problems with her left hand and wrist. She was then working as a nurse's aide, taking care of housebound individuals. On December 9, 1993 Raes filed a Form 9 with an attached medical report. She pressed a § 28 *reopening claim*[2] *for further medical treatment* upon the alleged recurrence of the healing period brought about by a change of her condition—the progressive deterioration of her left hand and wrist—which *manifested itself after* the claimant's *last award* on February 3, 1992.

Following a March 31, 1994 hearing the trial judge entered an order (a) ruling that Raes' left hand and wrist underwent a change of physical condition for the worse and (b) authorizing additional medical treatment with evaluation. *Expressly reserved* for future determination was the question of employer's liability, if any, for permanent disability. The order was affirmed on employer's appeal to a three-judge panel. The employer then sought appellate review. Vacating the panel's decision the Court of Appeals held that *its order was not supported by competent evidence.* The appellate court based its disposition on *lack of medical evidence attributing Raes' "worsened condition to the original injury."* We granted certiorari and now vacate the Court of Appeals' opinion to direct that the panel's decision be reinstated.

## II

## THE STANDARD OF REVIEW

While the *panel's review* of the trial tribunal's findings is governed by *a clear-weight-of-the-evidence test,*[3] this court, when re-examining the panel's factual resolutions, applies the *any-competent-evidence standard.*[4] If supported by competent evidence, the panel's *findings* on non-jurisdictional issues may not be disturbed on review.[5]

## III

## CLAIMANT'S REOPENING CLAIM

Raes' § 28 reopening claim (with medical report attached to Form 9) pressed for further medical treatment because of a postaward change in her underlying pathology. According to Raes, since the 1992 hearing

1. Form 3, the Employee's First Notice of Accidental Injury and Claim for Compensation, initiates the claim process. Raes filed a Form 3 on November 19, 1990 and an amended Form 3 on June 17, 1991.

2. The pertinent terms of 85 O.S.1991 § 28 are: "Upon its own motion or upon the application of any party in interest, on the ground of a change in conditions, the Court may at any time review any award, and, on such review, may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act, and shall state its conclusions of fact and rulings of law, and the Administrator shall immediately send to the parties a copy of the award. No such review shall effect such awards as regards any money already paid...." (Emphasis added.)

3. 85 O.S.1991 § 3.6(A).

4. *Benning v. Pennwell Pub. Co.,* Okl., 885 P.2d 652, 654–655 (1994); *Owings v. Pool Well Service,* Okl., 843 P.2d 380, 382–383 (1992); *Lacy v. Schlumberger Well Service,* Okl., 839 P.2d 157, 160 (1992); *York v. Burgess–Norton Mfg. Co.,* Okl., 803 P.2d 697, 699 (1990); *Parks v. Norman Mun. Hosp.,* Okl., 684 P.2d 548, 549 (1984); *Graves v. Safeway Stores, Inc.,* Okl., 653 P.2d 1236, 1238 (1982); *Standish Pipe Line Co. v. Kirkland,* 188 Okl. 248, 107 P.2d 1024, 1025 (1940); *Barnes v. Indian Territory Illuminating Oil Co.,* 170 Okl. 520, 41 P.2d 633, 635 (1935).

5. *Benning, supra* note 4 at 654–55; *Carpenter v. Douglas Aircraft Company,* Okl., 420 P.2d 911, 912 syl. 2 (1966); *Leffler v. McPherson Brothers Transport,* Okl., 396 P.2d 491, 493 (1964).

she has experienced a progressive deterioration of her injury. *Initially* (a) she had pain in two of her fingers of the left hand; (b) a lump would occasionally appear on her left wrist; (c) she had difficulty grasping large objects and (d) she had some numbness in her arm. *After the 1992 hearing* (a) Raes started experiencing onsets of pain in four fingers of her left hand; (b) the pain would go up her arm into the shoulder and into her neck, interfering with her sleep and reducing the ability to use her left hand; (c) her left arm and hand "were going completely numb" at night; (d) the lump on her wrist would increase and reduce in size, but never go away completely; (e) she was unable to grasp small objects, like buttons or aspirin pills; (f) poor circulation in her left hand would cause it to become cold and (g) occasionally she would lose feeling in her left hand, as a result of which she would cut or injure that hand (or fingers). She has worked constantly as a home health nurse's aide, confining her duties to taking care of patients in their home, performing light housekeeping, preparing meals and doing the laundry. These postaward changes in the physical condition of her left hand and wrist have affected Raes' vocation as a nurse's aide. She (a) has been unable to care for large bedridden patients and (b) had to reduce her work hours from 32 to no more than 24 per week.

Bama Pie argues alternatively that (a) Raes' medical evidence is insufficient to support the *factum* of a changed condition and (b) assuming it shows some change in pathology, it fails to connect the pressed need for further health care with the prior accidental on-the-job injury.

## IV

### PROOF ADDUCED IN SUPPORT OF THE REOPENING CLAIM

■ A claimant *must produce competent evidence* of a causal nexus between the relief sought (additional compensation and/or medical treatment) through a § 28 reopening claim and the harm attributable to the on-the-job injury—i.e., that the changed condition is a legitimate consequence of the compensable accident.[6] When a change of condition is shown to the tribunal's satisfaction as medically related to an on-the-job injury and producing increased disability or triggering recurrence of the healing period, it affords a tenable legal basis for additional relief affordable under the Workers' Compensation Act. 85 O.S.1991 § 28.[7]

### *The Original Injury*

In October 1989 Raes sustained injury to her left wrist and hand from repetitive trauma while popping frozen biscuits from cardboard trays. She was evaluated and treated at a medical clinic and then referred to Dr. C. He performed out-patient surgery for tendinitis of claimant's left wrist. She was later found to have carpal tunnel syndrome in the left wrist and was treated by steroid injections, medication and physical therapy. The condition of her left hand continued to deteriorate until July 1990 when Raes underwent surgery to *release* the syndrome. The same surgeon (Dr. C.) also performed a biopsy on a lump that had appeared on her left wrist. Later in December 1990 Raes was examined by Dr. M. for an impairment rating of this injury. The trial tribunal ruled that from her on-the-job injury Raes sustained 25% permanent partial disability to her left hand and wrist.

### *The Postaward Progressive Deterioration of Claimant's Condition*

■ Dr. M. re-examined Raes on November 16, 1993 to determine if her condition had undergone a change for the worse from the

6. *Bill Hodges Truck Co. v. Gillum,* Okl., 774 P.2d 1063, 1066 (1989). *See also Deep Rock Oil Corp. v. Anthony,* 161 Okl. 128, 17 P.2d 400, 401 syl. 1 (1932).

7. For the pertinent terms of 85 O.S.1991 § 28, see *supra* note 2. *See Nuway Laundry Company v. Hacker,* Okl., 396 P.2d 659, 663 (1964); *Terry v. Lee C. Moore Corporation,* Okl., 382 P.2d 446, 449 (1963); *Wade Lahar Construction Company v. Howell,* Okl., 376 P.2d 221, 224 (1962); *El Reno Trailers v. House,* Okl., 372 P.2d 224, 225 (1962); *Capitol Well Servicing Company v. Levescy,* Okl., 371 P.2d 905, 909 (1962); *Oklahoma Gas & Electric v. State Industrial Court,* Okl., 366 P.2d 609, 613 (1961).

cumulative trauma suffered while employed by Bama Pie. His report notes that over the previous six to eight months Raes had experienced increased pain in her left wrist, with burning sensation, numbness and tingling radiating into the middle, index and ring fingers of her left hand. Dr. M.'s re-examination of the claimant revealed she had a "positive Tinel's sign over the median nerve, and a positive impingement test of the left wrist." He also determined that she had a *markedly decreased grip strength* in the left hand." According to Dr. M., the claimant showed evidence of significant carpal tunnel syndrome, limited range of motion and flexor tendinitis of the left wrist. His report concludes that (a) her condition had "changed for the worse"; (b) the change necessitates further medical management and evaluation by Dr. C. and (c) she may also require further surgical intervention. Raes informed Dr. M. she was working as a certified nursing assistant and in her daily activities (at work and home) she used her hands and wrists in a normal manner.

Dr. M.'s medical report is challenged as *insufficient* because it does not specifically say that, in the doctor's opinion, claimant's change in pathology was connected to her work-related injury at Bama Pie. The opinion of a medical expert need not be given in categorical terms nor in the precise language of the statute. *A trial tribunal's award rests on competent evidence when it is supported by the general tenor and intent of the medical testimony.*[8]

While the critical report under consideration is not as precise as it might have been, its general tenor and intent clearly support the proposition that there has been progressive postaward deterioration of Raes' prior industrial injury, which was caused by the original work-connected trauma. Dr. M.'s *deposition testimony plainly indicates* that his re-examination of Raes was *for the sole purpose of determining whether there had been a change in pathology which was con-nected to her 1989 on-the-job injury.* He concludes that her condition, which had undergone a change for the worse, *now necessitates a re-evaluation by Dr. C. and further medical treatment.*

We accordingly hold that on this record the trial tribunal's order reopening Raes' claim for additional medical treatment, following a demonstrated change of her compensable condition, is supported by competent evidence.

The Court of Appeals' opinion is vacated and the three-judge review panel's order sustained.

All Justices concur.

8. *Special Indemnity Fund v. Stockton,* Okl., 653 P.2d 194, 200 (1982) (overruled in part on other grounds by *Special Indem. Fund v. Choate,* Okl., 847 P.2d 796, 810 n. 31 (1993)); *Groendyke Transport, Inc. v. Willson,* Okl., 527 P.2d 1364, 1367–1368 (1974); *Custom Sizes, Inc. v. Heard,* Okl., 476 P.2d 791, 793 (1970); *Lee Way Motor Freight, Inc. v. Highfill,* Okl., 429 P.2d 745, 747 (1967); *Raska v. Tulsa Tiling Service,* Okl., 397 P.2d 661, 663 (1964); *Rush Implement Co. v. Vaughn,* Okl., 386 P.2d 177, 180 (1963); *Wade Lahar, supra* note 7 at 222 syl. 5.