1999 OK CIV APP 60

**PAWNEE MUNICIPAL HOSPITAL, Petitioner,**

v.

**Nancye CUNNINGHAM, and the Workers' Compensation Court, Respondents.**

**No. 91,310.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 26, 1999.

Rehearing Denied March 23, 1999.

Certiorari Denied May 19, 1999.

Donald A. Bullard, K. Wayne Lee, Bullard & Hoehner, Oklahoma City, Oklahoma, For Petitioner,

Fred L. Boettcher, Walt Brune, Boettcher Law Offices, Inc., Ponca City, Oklahoma, For Respondents.

ADAMS, Judge:

¶1 Claimant Nancye Cunningham, while a respiratory therapy aide employed by Paw-nee Municipal Hospital (Employer), fainted in a hospital hallway and struck her head on the floor, allegedly causing injury to her jaw, neck, shoulders and back. Just prior to this incident, Claimant had been working in the emergency room holding an oxygen mask in place for a newborn who was also being warmed by heating lamps.[1] Claimant stood next to the baby's bed, holding the mask in place over the baby's face, for almost two hours in temperatures she estimated to be in excess of one hundred degrees. After she was relieved, she began walking toward her office to obtain money to buy her lunch and fainted, falling and striking her head on the floor. The injuries she sustained in that fall are the subject of this action.

¶2 Although it initially authorized medical treatment and paid Claimant temporary total disability benefits, Employer eventually denied Claimant's admitted injuries arose out of and in the course of her employment. According to Employer, Claimant's fainting was actually a syncope episode caused by a blood pressure medication, Normodyne, which she had just started taking a few days before this incident.

¶3 After trial, the trial judge denied benefits, concluding Claimant had not sustained an accidental injury arising out of and in the course of her employment. Claimant filed an en banc appeal, and the appeal panel vacated the trial judge's order, finding that order against the clear weight of the evidence and concluding Claimant had sustained such an injury, and remanded the case back to the trial judge to determine benefits. Employer filed a Petition for Review with the Oklahoma Supreme Court. The Court dismissed that review proceeding, concluding the panel's order was not a "reviewable disposition." Following that dismissal, the trial judge awarded Claimant benefits based on this injury.[2] Employer filed an *en banc* appeal, and the panel sustained the trial judge's order, concluding it could not reexamine the legal conclusions and factual findings made by the previous panel.

---

1. According to the evidence, the hospital did not have incubators, and Claimant was working with others to attend to the baby until it could be transported to a medical facility better equipped to handle its problems.

2. Employer's arguments all relate to the finding of compensability. It does not take issue with any findings relating to benefits.

¶4 In this review proceeding, Employer contends (1) the panel erred in not reexamining the previous conclusions and findings and (2) there is no competent evidence that Claimant's injury arose out of and in the course of her employment. We address the arguments in that order.

¶5 According to Employer, the second panel was not bound by the findings and conclusions of the first panel because the Supreme Court determined the first panel's findings were not "final." Whether the second panel could have issued different findings is of no consequence here. As noted by the Supreme Court in its order dismissing the first review proceeding, Employer may "seek review of the determination of the trial judge and the three-judge panel that the accident arose out of and in the course of [Claimant's] employment in a subsequent review proceeding brought after the next reviewable disposition in this cause." Employer has exercised that right, and we will review the findings and conclusions of the first panel, unchanged by the second panel, to determine whether they are supported by any competent evidence. *See Parks v. Norman Municipal Hospital*, 1984 OK 53, 684 P.2d 548.

¶6 Employer contends the order is unsupported by any competent evidence because Claimant's medical evidence is insufficient to establish that the heat and two hours of standing holding an oxygen mask over a newborn's face contributed causally to Claimant's fall.[3] Although Claimant's medical evidence recites a history of Claimant fainting from excessive heat and expressed the opinion that Claimant was injured in an "on-the-job" accident, Employer says the evidence must otherwise attribute some "medical" reason for the fainting episode, particularly in light of the evidence that Claimant was on Normodyne. We disagree.

¶7 "The opinion of a medical expert need not be given in categorical terms nor in the precise language of the statute. *A trial tri-

bunal's award rests on competent evidence when it is supported by the general tenor and intent of the medical testimony.*" *Bama Pie, Ltd. v. Raes,* 1995 OK 122, ¶11, 905 P.2d 811, 815. (Footnote omitted, and emphasis in original). Reading Claimant's medical reports as a whole, the panel could properly conclude that the expert expressed an opinion that the conditions under which Claimant had been working contributed to her fall.

¶8 Any complaint that this evidence did not consider the effect of the Normodyne is essentially a complaint about an inaccurate history. A party objecting to a medical opinion based upon inaccurate history has the burden of demonstrating either the witness did not consider a fact assumed to be material or that the omitted fact is indispensable and that its omission is fatal to the probative value of the expert's opinion. *Bostick Tank Truck Service v. Nix,* 1988 OK 128, 764 P.2d 1344. Employer did not cross-examine Claimant's medical expert. It demonstrated neither that Claimant's expert did not consider the potential effect of Normodyne, nor that such a consideration, if absent, would have changed his opinion.

¶9 The record contains competent evidence supporting the conclusion that Claimant sustained an accidental injury arising out of and in the course of her employment. The order is sustained.

SUSTAINED

HANSEN, J., concurs; BUETTNER, P.J., dissents with separate opinion.

KENNETH L. BUETTNER, Presiding Judge, dissenting:

¶1 The facts of this case are essentially undisputed. After assisting in the delivery of a baby in a warm emergency room of the Pawnee Hospital for as long as two hours, Claimant left the emergency room, and, while walking down the hallway toward her office, fainted. There is no dispute that her fall to the floor resulted in serious injuries.

3. This argument, and Claimant's response, assumes that the cause of her fall was a significant factor in determining whether her injury arose out of and in the course of her employment. This writer, at least, is not willing to make such an assumption without further inquiry. We need not reach this issue because we conclude there was competent evidence relating the cause of the fainting to her employment.

¶ 2 The trial judge denied benefits finding that Claimant did not sustain an accidental injury arising out of and in the course of her employment. Upon appeal to a three-judge panel, that decision was reversed and the case was remanded for an award of benefits.

¶ 3 Upon appeal to this court, the majority holds:

Reading Claimant's medical reports as a whole, the panel could properly conclude that the expert expressed an opinion that the conditions under which claimant had been working contributed to her fall.

A review of Claimant's evidence does not justify such a conclusion.

¶ 4 The evidence consisted of Cunningham's Exhibit 1, a letter from Dr. Holt, a dentist; Cunningham's Exhibit 2, a medical report from Dr. Hastings; Employer's Exhibit 1, a medical report from Dr. Farrar; Employer's Exhibit 2, progress notes from Cunningham's treatment involving Normodyne; and Employer's Exhibit 3, excerpts from the Physicians' Desk Reference regarding Normodyne.

¶ 5 Dr. Holt's letter states simply

I have been treating Ms. Cunningham since March 8, 1994 for injuries received in a work related accident on April 23, 1993. Most of her TMD related symptoms are improved, but her neck, shoulder, and back pain persists.

Please evaluate and treat her for these symptoms.

Dr. Holt's letter does not offer evidence that Cunningham's injury arose out of and in the course of her employment.

¶ 6 Dr. Hastings' report provides

This patient relates that on April 23, 1993, while employed ..., she was involved in an on-the-job accident. The patient states that she passed out, secondary to excessive heat, fell forward and landed on the floor...." This patient was involved in an on-the-job accident on April 23, 1993, while employed.... It is my opinion that as a result of this on-the-job accident, the patient has sustained injuries to her neck, with radicular pain into the shoulder ..., as well as into her arms.... This patient

has also sustained injuries to multiple teeth in her mouth, ... bilateral jaw fractures, ... back and hips.... I find that this patient is now temporarily totally disabled from her usual occupation, secondary to this job-related injury....

Thus, Dr. Hastings repeated Claimant's allegations regarding the accident, confirmed the accident occurred on the job, and described Claimant's injuries. He made no findings that Claimant's fainting was related to her work conditions.

¶ 7 Employer's expert, Dr. Farrar, opined that

(Cunningham) is alleging that by reason of being in a hot room, she had a syncopal episode. It is to be noted that she had just recently been started on a blood pressure medication ... Normodyne. Normodyne has a side effect of postural hypotension. I think it is reasonably probable, the etiology of the syncopal episode was related to her Normodyne, rather than historically standing in a hot room. Individuals do not stand in a hot room, walk out into a hall, and subsequently, have a syncopal episode. Therefore, I think other etiologies need to be explored.

* * *

Any treatment she receives for her neck and back of a chiropractic variety, again have no bearing or relationship to the trauma of April 23, 1993. I, ..., do not find that the syncopal episode of April 23, 1993, has arisen out of and in the course and scope of her employ, but was caused by postural hypotension related to a blood pressure medicine, Normodyne.

¶ 8 The medical progress notes indicate that Cunningham reported suffering vertigo and syncope May 5, 1993, two weeks after she fell after leaving the emergency room. The notes also indicate that Cunningham reported radicular pain in her arm and neck in November 1992, before she fell. The Physicians' Desk Reference explains that Normodyne "can cause decreased alertness, dizziness, drowsiness, and light-headedness."

¶ 9 Thus, I do not believe this case can be decided on the basis that both parties pre-

sented evidence of the cause of the fainting and the trial court could choose between the experts. Rather, the determinative issue is whether a fainting episode, on the employer's premises and during work hours, is compensable under the Workers' Compensation Act, without expert evidence as to the cause of fainting.

¶ 10 A claimant seeking compensation for an on-the-job injury bears the burden of proving the injury arose out of and in the course of employment. *American Management Systems, Inc. v. Burns*, 1995 OK 58, 903 P.2d 288.[1] To establish that an injury occurring on the job arose out of employment, the claimant must show 1) the nature of the work performed at the time of the injury, which may be established by lay testimony; and 2) a nexus between the work activity and the disability for which compensation is sought, which must be established by expert medical opinion. *Hughes v. Cole Grain Co.*, 1998 OK 76, 964 P.2d 206 ¶ 7.

¶ 11 Further, when they occur on premises owned or controlled by the employer, injuries sustained by an employee while going to or from work may be compensable in certain circumstances if (1) the claimant's employment is shown to have a connection to the causative risk encountered, *or* (2) the precipitating risk of harm was created (or maintained) by the employer. *Corbett v. Express Personnel*, 1997 OK 40, 936 P.2d 932. In *Corbett*, the claimant was also injured after leaving his workstation for lunch. The claimant was hurt when his motorcycle crashed in the employer's parking lot. In finding that the claimant's injuries did not arise out of and in the course of employment, the Oklahoma Supreme Court noted "not all injuries that occur on the job are compensable ... because a connection must be shown between the encountered causative *risk* that resulted in the workers' harm and the *conditions of his/her employment*." In *Corbett* the Court noted that 86 O.S.1991 § 3(F) was amended in 1986 to provide, in part, that "only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment."[2] How are we to interpret this language when an employee faints on the job and the only medical evidence is that the fainting was caused by a blood pressure medicine which the employee just started taking. According to the expert evidence, work conditions did not contribute to the fainting.

¶ 12 Since *Corbett*, the Oklahoma Court of Civil Appeals has said:

1. "Oklahoma's jurisprudence has long recognized that a compensable work-related injury must be *both* (1) occur *in the course of* and (2) *arise out of* the worker's employment. 291 85 O.S. 1991 § 3(7). These two distinct elements *are not to be understood as synonymous*. Because at the time of his murder Burns was in travel on assignment for the employer, his death undeniably occurred *in the course of* employment. The *determinative question* here is whether there is a *causal nexus* between Burns' demise and the risks of his employment. The arising-out-of-employment element of the claim reburies that an injury be *employment-related*, as opposed to one stemming from a purely *personal risk*. In short, the record must show that *Burns' death was causally related to the risks incident to his mission for the employer*." [footnotes omitted, emphasis in original.] *American Management Systems, Inc. v. Burns*, 1995 OK 58, 903 P.2d 288, 290–291.

2. Regarding idiopathic injuries (those peculiar to a particular claimant), case law has established that an idiopathic injury may be compensable only if a "risk factor peculiar to performing the task" is present. See *Bittman v. Boardman Co.*, 1977 OK 32, 560 P.2d 967 (claimant passed out and fell to the floor, sustaining injury; held, no risk peculiar to job contributed to fall, "because [claimant] had not had much sleep of late," and denial of claim sustained); *Halliburton Services v. Alexander*, 1976 OK 16, 547 P.2d 958 (idiopathic injuries arising out of risks of conditions personal to the claimant do not arise out of employment unless employment contributes to the risk of injury or aggravates the injury; held, injury to back in fall down stairs resulting from sudden and pre-existing back pain was contributed to by employment necessity of ascending/descending stairs and was compensable); *Moten v. Chandler Well Service*, 1961 OK 125, 363 P.2d 153 (idiopathic injuries sustained in fall from drilling platform resulting from dizziness/pneumonia were compensable, as hazard of receiving injury was increased by employment-related necessity of standing on elevated platform); *McKeever Drilling Co. v. Egbert*, 170 Okla. 259, 40 P.2d 32 (1935) (claimant suffered injury in fall from idiopathic sunstroke, held, hazard of falling on machinery peculiarly incident to employment duties, and injuries sustained in relation thereto compensable.)

while the fact that an accident occurred on the employer's premises is not of itself determinative of the employer's liability, it does tend to show that the risk of harm is causally connected to employment.

¶ 13 *Furr v. Wal–Mart,* 1998 OK CIV APP 147, ¶ 9, 966 P.2d 1193, 1196. The risk of harm in *Furr* was an employer supplied bathroom fixture. In *Barre v. TCIM Services, Inc.,* 1998 OK CIV APP 179, 971 P.2d 874, the risk of harm was employer supplied stairs upon which employee slipped and fell. *Cf. Ealom v. Labor Ready Temporary Services,* 1998 OK CIV APP 192, 970 P.2d 1182 (employee denied TTD and PPD for injuries sustained while locking customers in roller coaster). Contra *Hamilton v. Dub Richardson Ford,* 1998 OK CIV APP 180, 970 P.2d 1196, (employee fell in employer's break room while clocking out for lunch; if injury occurs while performing employer's work, clocking out, no analysis of greater risk necessary); *Brazeal v. Citgo Petroleum Corporation,* 1997 OK CIV APP 61, 946 P.2d 680 (injuries sustained while walking between parking lot and office arose out of and in course of employment).

¶ 14 In the instant case, Cunningham's expert medical evidence, the report of Dr. Hastings, did not establish a causal nexus between Cunningham's work activity and the fainting episode she experienced. Employer correctly states that Dr. Hastings' report states only that *Cunningham reported* that she fainted due to the heat. Dr. Hastings does not render an opinion regarding the causation of Cunningham's fainting spell and resulting disability. We have held that a doctor's statement that it is the doctor's *impression* that a claimant has suffered a particular injury which *could be* a result of on the job activity is not competent evidence to establish the causal nexus required to find an injury arose out of employment. *Tyson Foods, Inc. v. Marez,* 1996 OK CIV APP 137, 931 P.2d 760. Likewise, there is no expert medical evidence establishing that Cunningham's fall was caused by her work activity or that a peculiar risk factor contributed to the fall. The only competent medical evidence opines that Cunningham's fainting spell was caused by a purely idiopathic personal risk— the prescription medication Normodyne.

¶ 15 The question here is whether a presumably flat, straight hallway can be considered in and of itself an employer-supplied risk of harm to an employee who happens to faint on the job. If so, then it would seem the requirement of *Corbett* of a precipitating risk of harm created or maintained by the employer is merely a phantom. The Supreme Court in *Corbett* held: "nor may the parking lot's surrounding fence be viewed as an employer-created hazard exceeding the ordinary dangers to which the general public would be exposed." 936 P.2d at 935. In *Corbett,* the employee was attempting to leave his employer's presumably flat parking lot when he lost control of his motorcycle and crashed into a fence.

¶ 16 If the *Corbett* and *Burns* requirement of a risk causally connected with employment is to be negated, I would leave it to the Supreme Court to do so. Accordingly, I would hold that the order of Panel 1, that Cunningham suffered an injury arising out of employment, is not supported by competent evidence.