1998 OK 32

**PFL LIFE INSURANCE COMPANY,**
Petitioner,

and

**Mark Stevens Industries, Employer,**

v.

**Tammy FRANKLIN and the Workers' Compensation Court,**
Respondents.

No. 86950.

Supreme Court of Oklahoma.

April 14, 1998.

Rehearing Denied June 24, 1998.

Bradley J. McClure, Oklahoma City, for Petitioner.

Roger B. Hale and Philip D. Ryan, Boettcher, Ryan & Martin, Oklahoma City, for Respondents.

OPALA, Justice.

¶1 The dispositive issues tendered on certiorari are: (1) May the Workers' Compensation Court [WCC] *affect* in whole or in part, directly or obliquely, the compensation-payment liability of an *absent earlier insurance carrier* of the respondent-employer? and if not (2) Is the trial tribunal's award of medical expenses and temporary total disability, which is to be paid by the current rather than by the earlier insurer, supported by competent evidence? We answer the *first* question in the negative and the *second* in the affirmative.

¶2 Tammy Franklin [Franklin or claimant] sought compensation from her employer Mark Stevens Industries [employer] for injury affecting her hands and arms. PFL Life Insurance Company [PFL], *qua* employer's then-current insurer, denied liability and argued that the case presented nothing more than a "reopening" of an earlier claim for which the former insurer, State Insurance Fund [Fund], stood solely responsible. *Though targeted by the three-judge panel for allocation of liability, Fund, employer's former insurer, was not a party to the claim now on review.* The trial judge *found* claimant temporarily totally disabled, *allowed* compensation against employer and PFL and *ruled* that she was entitled to medical expenses. It "reserved . . . for future hearing" a determination of permanent disability. The three-judge panel *modified* the trial judge's order by "*reserving*" the right of all parties to "*apportion future awards of liability,* including permanent partial disability, . . . [between] additional parties . . . , which hereafter may be joined."[1] The Court of Civil Appeals sustained the panel's order.

---

**1.** For the pertinent terms of the panel's order see *infra* note 3.

¶ 3 We hold that the panel's attempted "reservation" with respect to an absent insurer's potential responsibility for a future award is an *impermissible forecast* and hence a *legal nullity*. A *non-party's legal responsibility presents no adjudicatory issue.*[2] The WCC was powerless to entertain an inquiry into the carriers' liability *inter se.* When *only one of two* successive employer's carriers stands before the court and the absent insurer lacks an opportunity to defend its interests, no legal effect may be ascribed to a tribunal's statement that "reserves" the absent insurer's potential liability. Since the reserved issue was never tendered and the earlier carrier was not a party, the "reservation" was both *gratuitous* and *impermissible.*

## I

### THE ANATOMY OF LITIGATION

¶ 4 Franklin had been employed by Mark Stevens Industries for almost three years. Her tasks, which related to assembly-line operations, required repetitive hand movements. Carpal tunnel syndrome in the *right hand* was her September 1994 diagnosis. She underwent surgery for this condition. Employer's then-insurer was the State Insurance Fund. *Franklin returned to work in November 1994.* PFL became the employer's insurer on March 1, 1995. In a March 17, 1995 hearing, conducted in an earlier claim, the WCC found permanent partial disability in her *right hand.* The record before us does not reveal which of the two successive carriers paid that award.

¶ 5 Franklin's second claim—now on review—was brought by her June 26, 1995. It alleges cumulative-trauma injuries to *both hands and arms.* She listed June 22, 1995 as the "date of last exposure." Claimant's testimony concerning the time she *first noticed the symptoms in both hands* was not entirely consistent. PFL argued that (a) Franklin's deteriorating condition began before PFL became employer's insurer and (b) solely the Fund should be held liable for the currently pressed impairments. *Fund was not a party in the proceeding.* The trial judge allowed claimant compensation for temporary total disability to *both* hands (with medical expenses) and *reserved* for a future hearing consideration of *permanent disability.* The three-judge panel "modified" that order by adding a "reservation" of apportionable liability if additional parties *"may hereafter be joined."* Fund was specifically mentioned as the "future" party.[3]

¶ 6 The Court of Civil Appeals sustained the panel's order. On certiorari granted upon PFL's petition, the issue urged here is that, under this court's "awareness" doctrine applicable to cumulative-trauma injury cases,[4] (1) Franklin was aware of her injury and (2) *before* PFL's *coverage period began,* she knew that it was employment-related. The proof of these two awareness-doctrine prongs, it is urged, *exculpate* PFL from *all* liability for the award under review and place *sole responsibility* for its payment upon the earlier carrier. *We vacate today the Court of Civil Appeals' opinion and the panel's order but sustain the trial judge's award.*

2. *Chickasaw Telephone Company v. Drabek*, 1996 OK 76, 921 P.2d 333, 336–337; *Wagoner v. Saunier*, 1981 OK 17, 627 P.2d 428, 430; *Wilsey, Bennett Co. v. Grant*, 1981 OK 68, 632 P.2d 382, 386; *Greco v. Foster*, 1954 OK 42, 268 P.2d 215, 218.

3. The three-judge panel's January 23, 1996 order states in pertinent part:

 " * * *II. MODIFIED TO ALLOW FOR THE ADDITION OF PARAGRAPH 4A AS FOLLOWS:
 THAT the Court reserves the right of the parties (respondent, PFL LIFE INSURANCE, and the claimant) to apportion future awards of

 liability, including permanent partial disability, against additional parties (State Insurance Fund, earlier carrier of respondent), which may hereafter be joined. * * * ."

4. In *Munsingwear, Inc. v. Tullis*, 1976 OK 187, 557 P.2d 899, 903, the court held that a cumulative-effect accidental injury occurs when a worker (a) becomes aware of the "ill effect" of repetitive on-the-job trauma and (b) understands the effect to be causally connected with employment. The *Tullis* awareness doctrine was later *refined* by *Coy v. Dover Corp./Norris Div.*, 1989 OK 71, 773 P.2d 745, 747, where an objective (reasonable man's) standard was superimposed upon both prongs of the *Tullis* test.

## II

### ¶ 7 THE WORKERS' COMPENSATION COURT LACKS ADJUDICATIVE AUTHORITY TO FORECAST OR OTHERWISE AFFECT THE COMPENSATION LIABILITY OF AN EMPLOYER'S ABSENT INSURER

### A.

### ¶ 8 *An Absent Insurer's Rights May Not Be Adversely Affected By Judicial Process; One Who Was Neither Joined As A Party To The Proceeding Nor Afforded Full And Fair Opportunity To Defend Its Interests Cannot Be Affected By Adjudicative Process Of The Workers' Compensation Court*

¶ 9 The Constitution inexorably commands no one's rights are to be adversely affected by judicial process that occurs in the absence of notice and (full and fair) opportunity to defend.[5] A compensation decision may not affect the interest of one who was not sufficiently identified—for delivery of the claim's notice—by papers filed in court.[6] At a bare minimum, legal notice must inform one of the antagonist's pressed demands and apprise one of the result consequent on default.[7]

¶ 10 Each of several successive carriers sought to be implicated in liability for a compensation claim is entitled to a constitutionally protected opportunity *to participate in all proceedings* that might culminate in allocation of all or some liability to any one insurer.[8] Liability allocated to a non-party risk carrier without that carrier's participation in the judicial process in which it was imposed will not pass muster when challenged by the minimum standards of due process.

¶ 11 The compensation claim under review here began with the filing of a prescribed form that named the responsible employer.[9] The WCC then gave the employer's *current insurer* (PFL) the required notice.[10] *Fund, the earlier insurer, was neither named in the claim form nor joined later.* PFL stood before the court as the employer's sole risk carrier. The panel's attempted "reservation" of Fund's potential liability clearly was an *impermissible* and *gratuitous* forecast of an absent carrier's potential exposure to possible future allocation of employer's liability for an award not yet made against any entity. It was *impermissible*

---

5. Due process of law requires that persons to be affected be given notice and an opportunity to be heard before any of their substantial rights may be altered or affected. *Snyder v. Smith Welding & Fabrication,* 1986 OK 35, 746 P.2d 168, 169–70; *Smith v. State Industrial Court,* 1965 OK 179, 408 P.2d 317, 320–321; *Armstrong v. Netherlands Pipeline Const. Co.,* 1968 OK 170, 447 P.2d 762, 764; *McMinn v. State,* 1961 OK 280, 366 P.2d 954, 957; *Matter of Estate of Pope,* 1990 OK 125, 808 P.2d 640, 642–43.

6. *See Wilsey, supra,* note 2 at 386. Notice must be reasonably calculated to inform interested parties of the pending action and of every critical stage so as to afford them an opportunity to defend or to meet the issues at a meaningful time and in a meaningful manner. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Baptist Medical Center of Oklahoma, Inc. v. Transcon Lines, Inc.,* 1993 OK 38, 852 P.2d 139, 143–44; *Pope, supra* note 5 at 642; *Wagoner, supra,* note 2 at 430; *Bomford v. Socony Mobil Oil Co.,* 1968 OK 43, 440 P.2d 713, 718.

7. The very minimum which Anglo–American law has required of legal process since time immemorial is that it inform a party served of the demands pressed and of the result consequent on default. *Wagoner, supra,* note 2 at 430.

8. *Baptist Medical Center, supra* note 6 at 143–44; *Snyder, supra* note 5 at 170; *Wilsey, supra,* note 2 at 386; *Smith, supra* note 5 at 320–321.

9. Rule 13(C), Workers' Compensation Court Rules, 85 O.S.1991, Ch. 4, App., provides:

"A Form 2, 3,.3–a or 3–b must be on file with the Court in order to invoke the jurisdiction of the Workers' Compensation court to hear a disputed Form 19 matter."

10. Rule 13(D), Workers' Compensation Court Rules, 85 O.S.1991, Ch. 4, App., provides, in pertinent part:

"When the claimant files a notice of claim form initiating a proceeding (Form 3, Form 3–a or Form 3–b), a copy of *that notice of claim form* bearing the assigned case number and the filing date *shall be mailed by the Court* to a single service agent of the self-insured employer, group self-insurance association, *insurance carrier* or State Insurance Fund *which shall be designated on a Form 7 and filed with the Court.*" (Emphasis added.)

because Fund was not before the tribunal; *it was gratuitous because PFL pressed not for co-allocation of liability but for its total exoneration by shifting to the absent carrier all responsibility for the claim.* PFL's effort to saddle a non-party with *total* liability ignored Fund's fundamental right to receive advance notice of the claim and to an opportunity to defend against PFL's demands.

¶ 12 The panel was utterly without power to affect the rights of a stranger to the claim. Its allusion to Fund's *potential* co-liability, which clearly contravenes the fundamental law's standards and is unsupported by the record, facially and plainly offends due process. The panel's "reservation" which affects the vital interests of an earlier insurer is hence a *legal nullity.*[11]

### B.

¶ 13 *An Adjudicated Employer's Liability In Workers' Compensation Is Always An Indivisible Integrity, Though It Might Be Judicially Allocable Severally To Successive Carriers For The Same Employer Who Are Found To Be Responsible For Different Time Stages of The Same Accidental Injury*

¶ 14 For every industrial accident the law recognizes but one claim—the worker's claim against her employer.[12] The liability adjudged in a compensation case is an *indivisible integrity owed by the employer to the claimant.* Whenever two or more carriers may be implicated, the WCC must *first* decide the *employer's liability for the claim* and *then,* if necessary, allocate it among the responsible risk carriers. Responsibility for compensable harm from the same injury may be allocable to successive insurers, if it is limited by the period of coverage during which the harm is found to have developed.[13] Successive risk carriers for the same injury, to whom liability is to be allocated, must be joined in the single claim. Though apportionable, their *pro tanto* liability is co-extensive with that of the employer.[14] Compensation responsibility of successive risk carriers for the same employer is *several,* rather than *joint* or *collective.* For satisfaction of the entire *liability,* claimant looks primarily to the employer.[15]

### C.

¶ 15 *The Ghost Tortfeasor Rule Is Antithetical To The Concept Of Apportioned Carrier's Liability In Workers' Compensation*

¶ 16 "Apportionment" of liability award between two successive insurers of the same employer is unlike that a jury would make in a "ghost tortfeasor" case.[16]

---

11. *Chickasaw, supra* note 2 at 337. A case is said to be *coram non judice* when the court in which it is brought has no jurisdiction to settle the dispute. A decision *coram non judice* is legally invalid. *Goldman v. Goldman,* 1994 OK 111, 883 P.2d 164, 166; *Board of Law Library Trustees v. State,* 1991 OK 122, 825 P.2d 1285, 1291. For the definition of *coram non judice, see* BLACK'S LAW DICTIONARY at 305 (5th ed.1979).

12. *Prophet v. Vickers,* 1992 OK 85, 833 P.2d 1231, 1232; *Williams Company v. Lawrence,* 1992 OK 3, 824 P.2d 1134, 1136; *see also Oklahoma Petroleum Workers' Compensation Ass'n v. Mid–Continent Casualty Co.,* 1994 OK CIV APP 107, 887 P.2d 335, 337–38.

13. *Id.* Allocation of successive carriers' liability is an issue *ancillary* to the employer's liability to the claimant. *State Ins. Fund v. Brooks,* 1988 OK 50, 755 P.2d 653, 657. If the carrier is bankrupt, the employer is responsible for the adjudged obligation. *Baptist Medical Center, supra* note 6 at 143–44; *Moran v. State ex rel. Derryberry,* 1975 OK 69, 534 P.2d 1282, 1286;

*Rucks–Brandt Const. Corporation v. Silver,* 194 Okl. 324, 151 P.2d 399, 401 [1944]; *see also Lum v. Lee Way Motor Freight, Inc.,* 1987 OK 112, 757 P.2d 810, 819.

14. Once a claim is decided against the employer, the liability of a risk carrier is dependent on the liability assessed against the employer. *Brooks, supra* note 13 at 658; *Maryland Casualty Company v. Hankins,* 1975 OK 25, 532 P.2d 426, 429; *United States Fidelity and Guaranty Company v. Theus,* 1972 OK 9, 493 P.2d 433, 435.

15. The risk carrier is liable to the employer for payment of the award as well as to the claimant as a third-party beneficiary of the indemnity. *Brooks, supra* note 13 at 657. By the provisions of 85 O.S.1991 § 65.3 workers are third-party beneficiaries of the employer's liability policy. *Goodwin v. Old Republic Ins. Co.,* 1992 OK 34, 828 P.2d 431, 433–34.

16. For cases discussing the ghost tortfeasor rule, see *infra* note 22.

In compensation law the term *apportionment*[17] (more accurately to be described as *allocation) means a division between carriers of a single employer's liability.* It is to be based on the percentage of harm occurring during the period for which each of several carriers may be found responsible. The concept differs from tort law where the same term denotes a percentage of liability to be attributed to each of several tortfeasors in the action.[18] The tort's *comparative negligence* concept is alien to compensation law's *allocation between successive carriers' several liability for the employer's award.*

¶ 17 Because the *employer's compensation liability is indivisible and not apportionable, all issues,* primary or ancillary, that pertain to the employer's responsibility for an industrial accident *must be litigated in the same claim.* The object of that proceeding is to determine *the quantum of the employer's obligation.* Once that has been determined, the proceeding comes to an end and with it the WCC's judicature.[19] When *allocation* has been made of the employer's liability to its several successive carriers, all of whom are before the court, the WCC has no other function to perform except, in case of nonpayment, to certify the unpaid liability for enforcement by the district court.[20] A tort case affords no comparable interplay of accountability. In short, the tort defendant's private-law responsibility bears absolutely no common characteristics with the several liability of successive compensation risk carriers.[21] The blame of a "ghost tortfeasor," not uncommon in comparative negligence, may be assessed in its absence from the action as a party defendant.[22] In compensation law, the focus is on *each carrier's liability to the employer's worker* and not on the *carriers' liability inter se.* There can be no "ghost carriers" in a compensation claim. This is so because the legally responsible carriers are liable severally and their liability must be allocated by the order that awards compensation against the employer.

¶ 18 PFL *neither* brought the Fund into the case *nor* objected to the conduct of trial tribunal's proceedings in the absence of that *earlier carrier to whom the entire liability for the same harm was sought to be shifted.* Because in the trial tribunal *only one insurer stood before the court,* the test now to be applied in assaying on review the decision's legal correctness is whether the award *made against the only targeted risk carrier* is supported by competent evidence.[23] We hold that it is.

**D.**

¶ 19 *The Rule Governing Allocation of Successive Carriers' Responsibility For Coverage Of The Same Accidental Injury*

¶ 20 Liability of successive carriers and its *allocation* to each of them must

---

17. For the term's usage in compensation statutes and rules, see 85 O.S.Supp.1997 §§ 3, 17, 22 and Rule 20, Workers' Compensation Court Rules, 85 O.S.Supp.1995, Ch. 4, App. (eff. July 1, 1995).

18. In tort law there can be several co-obligors, *Boyles v. Oklahoma Natural Gas Co.,* 1980 OK 163, 619 P.2d 613, 616–17, whereas in compensation law, the employer's liability may never be shared with several risk carriers, although several carriers may be liable to the same employer for the award's payment.

19. Once a carrier's liability for the claim has been established, no claimant may proceed against an absent insurer in a later proceeding to recover for the same injury. In contrast to this, a plaintiff may proceed against a ghost tortfeasor after a judgment against one of several other tortfeasors.

20. *Lum, supra* note 13 at 818.

21. A worker's quest for compensation due for an on-the-job injury constitutes a statutory public-law proceeding rather than a suit to recover in a private dispute. *Reynolds v. Special Indemnity Fund,* 1986 OK 64, 725 P.2d 1265, 1270; *National Gypsum Co. v. Brewster,* 1969 OK 185, 461 P.2d 593, 596; *Special Indemnity Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 (1948).

22. *Bode v. Clark Equipment Co.,* 1986 OK 21, 719 P.2d 824, 827. Any tort defendant can predicate its defense on a non-party's negligence. This is known as *"ghost tortfeasor"* liability. *Nichols v. Mid Continent Pipe Line Co.,* 1996 OK 118, 933 P.2d 272, 280; *Angel v. Cornell Const. Co., Inc.,* 1992 OK CIV APP 65, 841 P.2d 1163, 1165; *Johnson v. Mid–South Sports, Inc.,* 1991 OK 17, 806 P.2d 1107, 1116; *Paul v. N.L. Industries, Inc.,* 1980 OK 127, 624 P.2d 68, 69.

23. For a discussion of the any-competent-evidence test, see Part IV, *infra.*

be inquired into in a single judicial proceeding in which *all* multiple carriers to be held responsible must be made parties co-respondent with the insured employer.[24] The duty evolves on the carrier who is proceeded against to inform the WCC by allegations in its answer (or amended answer) that another carrier may bear liability either *for the whole or a part of the worker's single claim.* Before the proceedings have reached a critical stage, any party (either the employer, the carrier or claimant) may bring in as party-respondent any missing carrier believed to be necessary.[25] This requirement introduces into compensation law a long-standing district court axiom that a single cause of action cannot be split.[26] In short, an absent insurer's liability, *in toto* or *pro tanto*, must be raised and litigated as a part of the same claim.

### E.

### ¶ 21 *The Issue–Preclusive Effect of Today's Pronouncement*

 Although the pronouncement we are making today is issue preclusive of Fund's liability for the obligation adjudged by the award under consideration here, today's decision does not operate as a bar against a quest for imposition of Fund's co-liability or sole liability for awards *in futuro* that may be sought against the employer in the same claim if proof adduced by medical evaluation should demonstrate that the *adjudged impairment's origin* is attributable to the time when Fund was the employer's risk carrier.

### III

### THE "AWARENESS DOCTRINE" IS NOT AT ISSUE IN THIS CASE

 ¶ 22 A cumulative-effect injury is brought about by repeated trauma, often inflicted by a series of "micro trauma" which cause harm by their gradual, often imperceptible, onset.[27] Ascertaining the time of injury in cumulative-trauma cases is critical for determining (1) whether the claim was timely filed (within the applicable *limitations period*) and (2) what *rate of compensation* is to be paid.[28] The date of claimant's initial

24. The presence of all risk carriers in the same claim is critical *to the parties* for several reasons. If any part of the adjudicated liability were to remain unallocated because one alleged carrier is absent (a) the *employer* would be left saddled with that portion for which the absent carrier might be liable, (b) the *claimant* would not receive payment of the total award if the employer became bankrupt or judgment proof, (c) a *carrier* pressing for an advantageous allocation of liability would be placed in the position of litigating adversely to its own insured rather than against another carrier; and (d) the *insurer* would be deprived of an opportunity to litigate in the WCC its controversy with the absent (but allegedly responsible) successive or preceding carrier.

25. Any party may seek the joinder of other entities as respondents. The pertinent part of Rule 25, Workers' Compensation Court Rules, 85 O.S. 1991, Ch. 4, App., is:
 "A. A claimant who desires to add additional respondent(s), shall promptly amend the form 3, and mail a copy to all parties, including the additional respondent(s) and insurance carrier(s) named. Mailing shall constitute service upon the additional parties.
 B. A respondent who desires to add additional respondent(s) shall file a Form 13 requesting a pre-hearing conference on the issue, and mail a copy of the Form 13 to all parties, including the additional respondent(s) and insurance carrier(s) named. The Court shall notify all parties of the date of the pre-hearing conference. At the pre-hearing conference, the court shall hear argument, and based upon its discretion, enter its order granting or denying the request."

26. *See, e.g., Knight v. McBee*, 1988 OK 127, 767 P.2d 878, 878 (a claim cannot be split or divided); *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, 920 P.2d 122, 124 (a plaintiff is entitled to but one satisfaction for a single claim and is prohibited from splitting the claim by attempting to apportion damages among joint or concurrent tortfeasors).

27. This court first recognized in 1957 that an "accidental injury" may be effected progressively, over a lengthy period of time, from the cumulative effect of numerous micro traumatic episodes. *See Macklanburg–Duncan Co. v. Edwards*, 1957 OK 116, 311 P.2d 250, 255. *See also Decker v. Oklahoma State University*, 1988 OK 152, 766 P.2d 1371, 1374; *G.T. Harvey Co. v. Steele*, 1959 OK 220, 347 P.2d 802, 804.

28. *Rankin v. Ford Motor Company*, 1996 OK 94, 925 P.2d 39, 40–41 (claimant's wage rate is that which was in effect on the date claimant first became aware of his (her) cumulative-trauma injury; this is so because that is the time of the injury within the meaning of 85 O.S.Supp.1994 § 21); *see also Coy, supra*, note 4 at 747; *Tullis, supra* note 4 at 903.

awareness that an injury is employment-related generally triggers the statutory limitation.[29] The claim is barred if not filed within two years of the date the last harm-causing event took place.[30]

¶ 23 PFL argues Franklin's deteriorating condition was known to her to be employment-related when she returned to work in *November* 1994. This point *precedes* the effective date of PFL's coverage for the employer. The carrier hence urges that the law's "awareness doctrine" should place total liability for this award upon Fund, *qua* the employer's carrier when awareness began. *This argument is fatally flawed for four reasons:* (1) there is here *neither* a limitation question *nor* a controversy over the rate to be used for payment of Franklin's temporary total disability compensation; (2) no *shifting* or *reallocation* of liability is implicated; (3) Fund was not joined as a party and (4) competent record-proof supports the trial tribunal's finding and its conclusion *that the impairment to be compensated by this award did not exist before but resulted proximately from labor activities that occurred during PFL's coverage period.*

▇▇▇▇ ¶ 24 Because Fund was not a party, and there is competent evidence to support the trial judge's finding of PFL's liability for temporary total disability (with medical expenses), the panel was utterly without authority *gratuitously to inject* into the case the allocation of liability (between PFL and a stranger to the claim). *In compensation cases the issues are formed by the evidence.*[31] *None of the parties raised* the earlier carrier's *allocable liability.* Nor could it be implied. *Only one carrier* stood before the court. That carrier pressed *solely* for imposition of the *entire award* against the earlier insurer.[32] With only one carrier before it, the WCC could neither forecast, assess nor allocate the absent insurer's responsibility. Due process prohibits a judicial tribunal from engaging in sheer liability speculations and from forecasting them to affected entities who are absent from the process whence these speculations were drawn.

## IV

¶ 25 **THERE IS COMPETENT EVIDENCE TO SUPPORT THE SOLE PARTY–INSURER'S LIABILITY FOR THE AWARD ON REVIEW**

▇▇▇▇ ¶ 26 This court must apply the *any-competent-evidence* standard when reviewing the compensation tribunal's resolutions of fact on nonjurisdictional issues.[33] If

---

29. *Rankin, supra* note 28 at 41.

30. The pertinent terms of 85 O.S.Supp.1994 § 43 are:

 "A. The right to claim compensation under the Workers' Compensation Act shall be forever barred unless, within two (2) years after the date of accidental injury or death, a claim for compensation is filed with the Workers' Compensation Court. Provided however, a claim may be filed within two (2) years of the last payment of any compensation or remuneration paid in lieu of compensation or medical treatment which was authorized by the employer or the insurance carrier. Provided further however, *with respect to disease or injury caused by repeated trauma causally connected with employment, a claim may be filed within two (2) years of the date of last trauma or hazardous exposure.*\* \* \*"" (Emphasis supplied.)

31. *Benning v. Pennwell Publishing Co.*, 1994 OK 113, 885 P.2d 652, 655; *Carpenter v. Douglas Aircraft Co.*, 1966 OK 218, 420 P.2d 911, 913; *Leffler v. McPherson Brothers Transport*, 1964 OK 225, 396 P.2d 491, 493; *Wiles v. City of Stroud*, 1964 OK 190, 395 P.2d 404, 406.

32. PFL *did not invoke either below or on review* the terms of 85 O.S.1991 § 203, whose pertinent provisions are:

 "A. Whenever two or more carriers disagree as to which carrier shall be liable for the continuing health care expenses of an employee, the Court may order one of the carriers to start paying for health care costs immediately. The decision of the Court to choose one carrier over another to pay for the medical treatment of an employee shall not be appealable until the Court's final order as to the disability of the employee....

 ✻ ✻ ✻ ✻ ✻ ✻

 "C. The carrier in the final order who is on the risk for the injury shall immediately reimburse the other carrier for medical monies expended upon proper proof of payment."

33. 85 O.S.1991 § 26; *Benning, supra* note 31 at 654; *Bama Pie, Ltd. v. Raes*, 1995 OK 122, 905 P.2d 811, 813; *Owings v. Pool Well Service*, 1992 OK 159, 843 P.2d 380, 382–83; *Lacy v. Schlumberger Well Service*, 1992 OK 54, 839 P.2d 157, 160; *York v. Burgess–Norton Mfg. Co.*, 1990 OK

conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is not one of law but rather that of fact.[34] It is only in the absence of competent evidence[35] that a trial tribunal's decision may be viewed as legally erroneous and hence subject to appellate vacation.[36]

¶ 27 *On this record, competent evidence supports the finding* that claimant's temporary total disability from her cumulative-effect injury (with medical expenses) resulted from impairment suffered *during PFL's term of coverage*, and did not exist before. Medical reports and Franklin's testimony indicate that her work on employer's receiving dock coincided with PFL's term of coverage. The latter began on March 1, 1995.[37] Franklin's work assignment at the dock required her to lift boxes weighing from five to fifty pounds and to use a box opener. She performed these tasks during the entire eight-hour work day. In short, it is clear that *during PFL's coverage* Franklin was subjected to repetitive tasks requiring the use of her hands. That, coupled with supportive medical evaluation, supplies competent proof for the trial judge's finding that Franklin's micro-trauma culminating in her temporary total disability *resulted from activity that took place during PFL's coverage period.*

¶ 28 While PFL was free to argue that Franklin's initial exposure to micro-trauma took place earlier in her term of employment (or link the current injury to prior medical history) and to urge that Franklin's injury to be compensated in this claim had manifested itself earlier than March 1, 1995,[38] the power to resolve a factual dispute so tendered stood reposed in the WCC. Because competent evidence supports the finding that Franklin's temporary total disability (with medical expenses) resulted from her micro-traumatic injury sustained from activities that took place between March 1, 1995 and June 22, 1995 (during PFL's term of coverage), we are powerless to disturb the trial tribunal's award.

## V

## SUMMARY

¶ 29 The "awareness doctrine", which is employed to establish the date of injury for limitations and rate-of-compensation purposes, is not in controversy here. *Only the employer's current insurer was a party to the proceedings.* No issue was joined for an award's partial allocation to an earlier carrier. Competent evidence supports the trial judge's determination that claimant's temporary total disability (with medical expenses) from her microtraumatic exposure resulted from activities that took place within the time PFL was carrying the employer's compensation risk. By force of statute, findings of nonjurisdictional facts made in compensation

---

131, 803 P.2d 697, 699; *Parks v. Norman Mun. Hosp.*, 1984 OK 53, 684 P.2d 548, 549; *Graves v. Safeway Stores, Inc.*, 1982 OK 130, 653 P.2d 1236, 1238; *Standish Pipe Line Co. v. Kirkland*, 188 Okl. 248, 107 P.2d 1024, 1025 (1940); *Barnes v. Indian Territory Illuminating Co.*, 170 Okl. 520, 41 P.2d 633, 635 (1935).

**34.** Controlling language in 85 O.S.1991 § 26 provides that "[t]he decision of the [Workers' Compensation] Court shall be final as to all questions of fact, and except as provided in Section 3.6 of this title, as to all questions of law." *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, 653 P.2d 201, 203; *Flick v. Crouch*, 1967 OK 131, 434 P.2d 256, 260–61.

**35.** "Competency" refers to the legal sufficiency of the admitted evidence to support the decision. In applying the any-competent-evidence standard, it is not this court's duty to weigh the adduced evidence but simply to canvass the facts to determine if the tribunal's decision is supported by competent proof. *Lacy, supra* note 33 at 160–61; *see also Parks, supra* note 33 at 552.

**36.** *Parks, supra* note 33 at 552; *Chromalloy–American, Okla. Div. v. Wright*, 1977 OK 93, 567 P.2d 71, 73.

**37.** According to Franklin's testimony, upon her November return to work, she spent three to four months stuffing the covers of bibles and one to two months answering phones for her employer. While the exact dates of each time period are absent from the record, subtracting the terms of each of Franklin's first two positions from her seven-to-eight-month span of employment yields a total of one to four months that she spent working on the receiving dock. Some, if not all, of her time at the receiving dock took place between March 1 and June 22, 1995, during PFL's coverage term.

**38.** March 1, 1995 is the beginning of PFL's coverage.

claims are conclusive and binding on appellate courts, if rested on competent evidence.[39] Only if that level of probative support is lacking, may a trial tribunal's resolution of nonjurisdictional facts be disturbed on review. The panel's attempted "reservation" of Fund's potential liability for awards not yet made is an unauthorized forecast on an issue that was *coram non judice* and hence a *legal nullity*.

¶30 **ON CERTIORARI GRANTED UPON PFL'S PETITION, THE COURT OF CIVIL APPEALS' OPINION AND THE ORDER BY THE THREE–JUDGE REVIEW PANEL ARE VACATED; THE TRIAL JUDGE'S AWARD IS SUSTAINED.**

¶31 KAUGER, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and ALMA WILSON, JJ., concur.

¶32 SUMMERS, V.C.J., and WATT, J., concur in result.

---

39. *See* the pertinent terms of 85 O.S.1991 § 26, *supra* note 34. *See also Breckenridge v. Bray Lines,* 1989 OK 120, 782 P.2d 909, at 910; *Parks, supra* note 33 at 551; *Pearl v. Associated Milk Producers, Inc.,* 1978 OK 105, 581 P.2d 894, 897; *Bittman v. Boardman Co.,* 1977 OK 32, 560 P.2d 967, 968; *Morris v. City of Oklahoma City,* 1979 OK 174, 606 P.2d 1129, 1130; *Merrill v. State Industrial Commission,* 1955 OK 332, 290 P.2d 1095, 1098; *Howland v. Douglas Aircraft Co., Inc.,* 1968 OK 9, 438 P.2d 5, 6.