2016 OK CIV APP 25

**Kenneth E. SOULE, Petitioner,**

v.

**CRANE LOGISTICS &/or James Crane &/or Crane Cartage Freight Systems &/or William & Barbara O'Connell &/or Ashton Leasing and the Workers' Compensation Court of Existing Claims, Respondents,**

**and**

**Wildcat Freight Inc., Respondent,**

**and**

**Unknown or not Specified &/or Travelers Indemnity Co. of Connecticut &/or No Insurance, Insurance Carrier.**

**No. 113,996.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 11, 2016.

Phillip P. Owens II, Owens Law Office, PC, Oklahoma City, Oklahoma, for Petitioner.

James Leo Gaston Jr., Adelson, Testan, Brundo, Novell & Jimenez, Oklahoma City, Oklahoma, for Travelers Indemnity Company of Connecticut and Respondent Crane Cartage, LLC.

Mark T. Hamby, Kymberly J. Watt, Widdows Law Firm, P.C., Tulsa, Oklahoma, for Respondents William and Barbara O'Connell.

DEBORAH B. BARNES, Judge.

¶ 1 Petitioner Kenneth E. Soule (Claimant) appeals an Order of a three-judge panel of the Workers' Compensation Court of Existing Claims affirming the trial court's "Miscellaneous Order" denying Claimant's motion to join additional parties as employers. Based on our review, we sustain.

## BACKGROUND

¶ 2 Claimant filed a Form 3 in June 2011 alleging he sustained a compensable injury "on or about" February 5, 2011, when he entered a gas station and "caught [his] leg on rack," causing him to cut his left leg and twist his left knee. Claimant alleged this injury was suffered while he was employed as a truck driver for Wildcat Freight Inc. (Wildcat). Wildcat filed a Form 10 contesting the compensability of Claimant's alleged injuries.

¶ 3 Trial was held on July 18, 2012, on the issue of the compensability of the alleged injuries to Claimant's left leg and knee. In addition, if the trial court found the alleged injuries to be compensable, Claimant was also requesting temporary total disability (TTD) benefits, as well as medical care and expenses. In response, Wildcat asserted at trial that "any problems in [Claimant's] left leg or left knee are due to radiculopathy from his back or diabetic neuropathy, as well as osteoarthritis and medical to that affect." Claimant's counsel called two witnesses to the stand to testify: Claimant, and one of Claimant's coworkers. Wildcat did not call any witnesses to testify.

¶ 4 In its order filed in July 2012, the trial court rejected Wildcat's "defense of preexisting condition which is significant enough to extinguish liability for this injury...." Instead, the trial court found that Claimant suffered compensable injuries to "the LEFT LEG (KNEE) arising out of and in the course of [his] employment," specifically finding that Claimant's "fall to a floor resulting in aggravation of a preexisting condition constitutes the major cause of [C]laimant's injury." Consequently, the trial court awarded Claimant "14 weeks and 1 day" of TTD benefits, from February 5, 2011, to May 15, 2011,

in the total amount of $10,167.20. The court reserved the issue of additional TTD, as well as a determination of permanent disability, if any, for future hearing. The court also ordered, among other things, that Wildcat "and/or insurance carrier shall provide [Claimant] with reasonable and necessary medical care with a physician selected by [Wildcat]," and that Wildcat "and/or insurance carrier shall pay all reasonable and necessary medical expenses incurred by [C]laimant as a result of said injury."

¶ 5 In August 2012, as a result of Wildcat failing to pay Claimant pursuant to the July 2012 Order, Claimant filed a Form 13 "request[ing] certification of [the] TTD Order." In the "Judgment and Certification of Unpaid Award," filed in October 2012, the trial court stated that "since entering [the July 2012 Order], [Wildcat] has failed to comply herewith in accordance with said Order, and defaulted in the payment of said Order...." The court stated that Claimant "is hereby authorized to file certified copies of the [July 2012] Order ... with the Court Clerk and County Clerk of any county in the State of Oklahoma, pursuant to 12 O.S. § 706," and stated that the "Certification of Unpaid Award shall have the same force and effect as judgments of the District Court."

¶ 6 Although previously represented by counsel, Claimant, in November 2012, filed pro se another Form 13, seeking to join additional parties as employers. In March 2014, after retaining new counsel, Claimant filed a brief in support of his Form 13 motion to join additional parties, asserting that although Wildcat was Claimant's "nominal" employer, Crane Logistics and/or Crane Cartage Freight Systems (Crane Freight), rather than Wildcat, "fully directed and controlled Claimant's employment." He asserted that he interacted with Crane Freight's employees throughout the relevant period, and "[t]he only thing ... [Wildcat] appeared to have to do with his employment was issuing his paychecks." Claimant admitted in his brief that he "brought this action solely against [Wildcat] and an Order was entered." He stated: "However, [Wildcat] had no workers' compensation coverage, and the Order has not been paid. Claimant has been forced to utilize his own medical insurance to obtain the treatment needed for his injuries." Claimant asserted that under the applicable Workers' Compensation statutes, Crane Freight was his "direct employer" and, on this basis, should be responsible for making benefit payments to Claimant. He further argued that Crane Freight should, at the very least, be found "secondarily liable for compensation benefits to Claimant" because Claimant's services were a "necessary and integral" part of Crane Freight's business. Claimant concluded his brief by stating: "Wildcat was Claimant's immediate employer and [Crane Freight] was his primary employer. Wildcat is apparently out of business and has no workers' compensation coverage. [Crane Freight] is secondarily liable for compensation to Claimant, and should be joined in this case." In addition, on October 2, 2014, Claimant filed a Form 3 attempting to amend his original Form 3 to add "Crane Cartage, LLC/Crane Logistics, William and Barbara O'Connell" as employers, despite the fact that trial had occurred, and the trial court's order awarding TTD benefits had issued, more than two years prior.

¶ 7 In its "Miscellaneous Order" filed on October 20, 2014, the trial court stated as follows:

–1–

THE [C]laimant testified at JULY 18, 2012 hearing that his employer on date of injury was [Wildcat]. Claimant made no mention of any employment relationship of any type or description with the parties that he now seeks to join to this claim.

–2–

THAT the order filed JULY 18, 2012, found [C]laimant to have been employed by [Wildcat] on date of injury of FEBRUARY 5, 2011. That order, unappealed, is final. [Wildcat] (and no other entity) has been fully and finally determined to be [C]laimant's employer.

–3–

THAT upon non-compliance of the order, [C]laimant secured certification of same to District Court by order filed OCTOBER 9, 2012.

–4–

THAT [C]laimant's NOVEMBER 30, 2012 motion to join came long after the JULY 18, 2012 and OCTOBER 9, 2012 orders were final.

THAT this Court will not litigate issues which were not reserved at time of trial and which were completely and fully within the knowledge of the parties at time of trial.

¶ 8 The trial court, therefore, denied Claimant's motion to join additional parties, after which Claimant sought review by a three-judge panel. In its Order filed on May 14, 2015, the three-judge panel affirmed the trial court's order denying Claimant's motion to join additional parties.

¶ 9 From the Order of the three-judge panel, Claimant appeals.

## STANDARD OF REVIEW

¶ 10 The issue presented on appeal—whether the trial court erred in denying Claimant's request to join additional parties—presents a question of law. "Questions of law are reviewed by a de novo standard under which this Court has plenary, non-deferential and independent authority to determine whether lower courts have erred in their legal rulings." *Graham Pub. Sch. v. Priddy*, 2014 OK 30, ¶ 8, 328 P.3d 1190 (citation omitted).

## ANALYSIS

¶ 11 The Oklahoma Supreme Court has made it clear that the "long-standing district court axiom that a single cause of action cannot be split" applies in the Workers' Compensation Court (now, Court of Existing Claims). *PFL Life Ins. Co. v. Franklin*, 1998 OK 32, ¶ 20, 958 P.2d 156 (footnote omitted). In *Franklin*, confronted with circumstances analogous to the present case, the Supreme Court concluded that "an absent insurer's liability, *in toto* or *pro tanto*, must be raised and litigated as a part of the same claim." *Id.* The Supreme Court also stated as follows:

Because Fund was not a party, and there is competent evidence to support the trial judge's finding of PFL's liability for temporary total disability (with medical expenses), the panel was utterly without authority *gratuitously to inject* into the case the allocation of liability (between PFL and a stranger to the claim). *In compensation cases the issues are formed by the evidence. None of the parties raised the earlier carrier's allocable liability. Nor could it be implied. Only one carrier* stood before the court. That carrier pressed *solely* for imposition of the *entire award* against the earlier insurer. With only one carrier before it, the WCC could neither forecast, assess nor allocate the absent insurer's responsibility. Due process prohibits a judicial tribunal from engaging in sheer liability speculations and from forecasting them to affected entities who are absent from the process whence these speculations were drawn.

*Id.* ¶ 24 (footnotes omitted) (emphasis in original).

¶ 12 Similarly, in the present case, only one employer—Wildcat—was named by Claimant and present at the trial where the compensability of Claimant's alleged injuries, and the liability for TTD benefits (and medical expenses), were determined. Neither party raised the proposed additional employers' allocable liability at the time of trial (nor within almost two-and-a-half years after trial), and in the proceedings below Claimant pressed for relief solely against Wildcat. Thus, the trial court properly denied Claimant's attempt to join additional employers post-judgment because the trial court is prevented from speculating as to the liability of the proposed additional employers, parties that were not present to defend themselves at trial and that were absent from the process whence such speculations might be drawn.

¶ 13 Further guidance is found in *Retherford v. Halliburton Co.*, 1977 OK 178, 572 P.2d 966,[1] where the appellants attempted to

---

1. Although *Retherford* is not a compensation case, the Supreme Court, as quoted above in *Franklin*, has stated that the "long-standing district court axiom that a single cause of action cannot be split" applies in the Workers' Compensation Court (now, Court of Existing Claims).

"characterize appellee's two new suits as merely a subsequent attempt to recover items or elements of her damage not sought in her prior action." *Id.* ¶ 5. The Supreme Court stated that Oklahoma follows "the general rule against splitting causes of action," meaning "that a single wrong gives rise to one cause of action ... for which only one suit may be maintained to recover all damage because of the commission of such wrong, however numerous the elements or items of damage resulting therefrom." *Id.* ¶ 4. Therefore, the Supreme Court stated that "[t]he pivotal issue before the Court becomes, quite simply, what is a 'cause of action'?" *Id.* ¶ 9.

¶ 14 In the present case, it is not in dispute that the theories which Claimant is attempting to assert against the additional employers (by joinder) arise from the same cause of action already litigated at the July 2012 trial. *See* Black's Law Dictionary (10th ed. 2014) (A "cause of action" is defined, in relevant part, as the underlying "group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person[.]"). In Oklahoma, a cause of action

exists to satisfy the needs of plaintiffs for a means of redress, of defendants for a conceptual context within which to defend an accusation, and of the courts for a framework within which to administer justice.
....
... [T]his jurisdiction is committed to the wrongful act or transactional definition of a "cause of action." Thus, no matter how many "rights" of a potential plaintiff are violated in the course of a single wrong or occurrence, *damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication.*

*Resolution Trust Corp. v. Greer,* 1995 OK 126, ¶ 11 n. 5, 911 P.2d 257 (emphasis added) (citation omitted) (quoting *Retherford,* ¶¶ 9, 13).

¶ 15 "[C]ourts favor intervention and joinder of party defendants as a convenient or pragmatic method of settling contro-

versies relating to the same subject matter," *Brown v. Patel,* 2007 OK 16, ¶ 28, 157 P.3d 117, but "the addition of parties" must be "during the pendency of that action," *Liberty Nat'l Bank and Trust Co. of Okla. City v. Garcia,* 1989 OK 96, ¶ 15, 776 P.2d 1265. Joinder of a defendant *"after* judgment denies him the right to defend in the original action." *Id.* ¶ 18 (emphasis added). "Only in extraordinary circumstances will parties be added after judgment." *Id.* ¶ 20.

¶ 16 In *Garcia,* the Supreme Court concluded that "[n]o extraordinary circumstances are present in the case at bar" because the party attempting to add the additional defendant, post-judgment, "at all times knew of the existence of [the additional defendant's] interest in the outcome, but waited until the trial court entered judgment ... before" attempting to add that defendant, and, moreover, the Court determined the proposed additional defendant would be prejudiced by being added post-judgment because the addition of a party after judgment "undoubtedly" results in prejudice if that party "is unable to defend against the original plaintiff's claim upon which his liability may depend." *Id.* ¶¶ 21, 22 & 25.

¶ 17 In accordance with the case law discussed above, Rule 34 of the Rules of the Workers' Compensation Court, 85 O.S. Supp. 2006, ch. 4, app., states, in pertinent part, that "[a] claimant who desires to add additional respondent(s), *shall promptly amend the Form 3,* and mail a copy to all parties, including the additional respondent(s) and insurance carrier(s) named." (Emphasis added.) Here, Claimant did not attempt to amend the Form 3 to add the additional employers until October 2, 2014, more than two years after the July 2012 trial and order determining, among other things, the compensability of Claimant's injuries.

¶ 18 Furthermore, Claimant does not assert he was unaware of the existence of the additional employers at the time of the July 2012 hearing or even at the time of the filing of the original Form 3 in June 2011. For example, Claimant states in his brief filed

Therefore, Supreme Court cases applying this axiom in other circumstances are instructive.

below in support of his motion to join the additional parties that he

> came into contact with [Wildcat] *and the proposed new Respondents* through answering an internet advertisement. He spoke by telephone with a person named Callie, who advised that she was an employee of Ashton Leasing, owned by William O'Connell. Claimant was told that Mr. O'Connell had created a new company called [Wildcat]. They were looking for drivers to haul ... motorcycles from the Crane Freight ... warehouse in Kansas City, Missouri to various dealers around the country.[2]

Claimant further admits he was "told [at that time] that [Crane Freight] would take the application, do the background checks, and qualify the drivers. The [Crane Freight] supervisors would make the hiring decision and complete the hiring process." In sum, Claimant admits that he was aware that Crane Freight, rather than Wildcat, "fully directed and controlled Claimant's employment," and Claimant essentially argues that he should have added Crane Freight (and the other proposed employers other than Wildcat) in his original Form 3.

¶ 19 Claimant *does* assert that at the time of his hiring, he "personally asked about workers' compensation coverage" and was "assured by the [Crane Freight] employees that workers' compensation coverage was in place along with all other required coverages."[3] Apparently for this reason Claimant, as he admits, "brought this action solely against [Wildcat]," only to discover, apparently after trial, that "[Wildcat] had no workers' compensation coverage...."

¶ 20 We conclude that such circumstances, if taken as true, fail to constitute "extraordinary circumstances" necessary to add the proposed parties after judgment because the factors stressed by the Supreme Court in *Garcia* are still present in this case: (1) that Claimant at all times knew of the existence of the proposed employers and their potential liability, and (2) the proposed employers would be prejudiced by being added post-judgment for the same reasons set forth in *Garcia*.

¶ 21 Furthermore, even if Claimant is asserting that Wildcat, or the proposed employers, fraudulently misrepresented to Claimant that Wildcat had workers' compensation insurance in place and that he should therefore only name Wildcat as an employer, "[a] final order by the Workers' Compensation Court can be *vacated* or *modified* only (a) in a *proceeding instituted in this court* within the prescribed time interval [i.e., by a timely appeal] or (b) in a *district court action* where relief is sought from an award procured by extrinsic fraud." *Stidham v. Special Indem. Fund*, 2000 OK 33, ¶ 7, 10 P.3d 880 (footnote omitted).[4] As accurately stated by the trial court, the July 2012 Order was *never appealed* and became a final order. Furthermore, Claimant has *not* attempted to pursue an action in the district court seeking to vacate or modify the July 2012 Order on the basis that it was procured by extrinsic fraud. Therefore, even if that order was somehow "irregular or erroneous," it cannot be treated as void because its terms were within the court's jurisdiction. *Id.* ¶ 9.

¶ 22 Finally, because the July 2012 Order is a final order, the doctrine of claim preclusion is pertinent to our analysis. Claim preclusion "operates to bar relitigation by the parties or their privies of issues which either were *or could have been* litigated in a prior action which resulted in a final judgment on the merits." *Sill v. Hydrohoist Int'l*, 2011 OK CIV. APP 80, ¶ 12, 262 P.3d 377 (citation omitted) (footnote omitted). Pursuant to this doctrine, "a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim but also any theories or issues that were actually decided, or could have been decided, in that action." *Id.* (citation omitted). The liability of the proposed employers, whose connection to the case was

---

2. R. at 88 (emphasis added).

3. Although not clearly stated by Claimant, we will assume for purposes of this discussion that Claimant is asserting he was told that *Wildcat* had adequate workers' compensation coverage in place.

4. Although not pertinent to this case, we note that a final order may also be collaterally attacked as void based on a jurisdictional infirmity present on the face of the record. *Id.*

known throughout the proceedings below, is clearly an issue that could have been litigated in the proceedings that resulted in the trial court's final order of July 2012. Therefore, Claimant's attempt to add the proposed employers—whether connected to an attempt to relitigate the issues already determined at the July 2012 trial, or whether part of an attempt to retrospectively determine the issues as they relate to the proposed employers based on liability speculation drawn from the proceedings at which the proposed employers were absent—is barred by claim preclusion.

¶ 23 Claimant chose to name only Wildcat as an employer, and, in violation of Workers' Compensation Rule 34, he did not attempt to amend his Form 3 to add the additional employers until over two years *after* the trial and compensation order. Because the proposed employers were not parties to those proceedings, proceedings which resulted in a final order, the trial court properly determined it is without authority to join those parties—parties whose potential liability was not raised or reserved by either party at trial.[5] For these and the additional reasons discussed above, we sustain the Order.

## CONCLUSION

¶ 24 Based on our review, we sustain the Order of the three-judge panel affirming the trial court's "Miscellaneous Order" denying Claimant's motion to join additional parties as employers.

¶ 25 SUSTAINED.

THORNBRUGH, P.J., and RAPP, J., concur.

---

**5.** We note that Claimant cites to *Dean's Well Service v. Lane*, 1992 OK CIV APP 126, 842 P.2d 765 (memorandum opinion), where a separate Division of this Court determined that, under certain circumstances, a previously dismissed party may become liable as a secondarily liable employer to pay workers' compensation benefits to a claimant when the primarily liable employer files for bankruptcy and the first insurance carrier proves to be non-existent. Unlike in the present case, however, in *Lane* the claimant *timely set forth the secondarily liable employer in his Form 3 prior to trial.* On appeal, this Court essentially concluded that the trial court erred as a matter of law by granting the motions of the other respondents to dismiss the secondarily liable employer from the case. Hence, the circumstances presented in *Lane* are entirely distinguishable from the circumstances of the present case, and the basis of the addition of the secondarily liable employer in *Lane*—that that party was timely added in the Form 3 as an employer but was improperly dismissed by the trial court—is absent from the present case.